IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| DARIEN HOUSER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 10-0416 |
| v. | ) | Magistrate Judge Cynthia Reed Eddy |
| | ) | |
| JEFFREY BEARD, et al, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER REGARDING
"PLAINTIFF'S OBJECTIONS & RESPONSE TO
MAGISTRATE JUDGE ORDER AND DEFENDANTS RESPONSE
TO PLAINTIFF'S OBJECTIONS" (ECF NO. 169);
"RESPONSE TO MAGISTRATE JUDGE
AMEND CASE MANAGEMENT ORDER" (ECF NO. 170);
AND "NOTICE" (ECF NO. 171)**

**I.   Introduction**

**A.   Pending Discovery Motions**

The Court stayed the summary judgment briefing schedule in order to address three discovery related filings (ECF Nos. 169, 170, 171) by Plaintiff Darien Houser. Text Order of May 8, 2013. After preliminarily reviewing these filings, this Court construed them as mostly, although not entirely, objections to orders directing production of discovery or denying certain of Plaintiff's discovery requests, and requests that the Court compel additional discovery from Defendants, who he claims have not fully complied with the discovery orders. Thus, the Court deemed these three filings to be discovery motions (and will refer to them as such) and directed defendants to respond. Order of May 14, 2013 (ECF No. 172).[1]

---

[1] This Order also directed the parties not to file additional motions or requests concerning the matters raised in the deemed discovery motions until the Court had resolved them. Based on that prohibition, the Court struck Plaintiff's Notice (ECF No. 178) and denied all of the relief requested therein. *See* Order of June 28, 2013 (ECF No. 183).

After careful consideration of Plaintiff's deemed discovery motions, defendants' responses, and the convoluted procedural history and record, the Court will address and resolve the pending motions seriatim. At the outset, however, in order to make an informed decision about the discovery disputes, and before rescheduling motions for summary judgment and briefs, it is necessary to take a brief but detailed look at the docket and the state of the record.

### B.     Amended Complaint (ECF No. 81) - The Operative Complaint

The initial 28 months of litigation need not be recounted for purposes of the pending discovery disputes.[2] The point at which Plaintiff's claims began to crystalize commenced with his Amended Complaint that was dated by him on July 15, 2012, postmarked July 17, 2012, but filed with the Court on July 31, 2012 at (ECF No. 81). That Amended Complaint alleges claims arising from the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. § 12101, and various state trespass causes of action, and names dozens of defendants within the Pennsylvania Department of Corrections at his place of confinement, SCI-Greene, each of whom is an official, corrections officer, employee, agent or medical health care provider involved in treatment of Plaintiff's medical ailments and complaints and in processing related grievances.

In its Order of August 6, 2012 (ECF No. 82), this Court denied Plaintiff's Motion for Reconsideration dated July 26, 2012, postmarked July 27, 2012, but filed with the Court on July 31,

---

[2] To be sure, Plaintiff is responsible for most of the delay and confusion that has permeated these proceedings by his repeated, varied and often overlapping motions, notices, objections and other filings. *See, e.g.*, District Judge's Memorandum Order of September 6, 2012 (ECF No. 91), rejecting one of Plaintiff's numerous appeals (stating, *e.g.*, at 5, "Plaintiff has shown a remarkable capacity to file a voluminous amount of lengthy pleadings with the Court . . . ."); Plaintiff's "Motion for Reconsideration re Order on Motion for Reconsideration" (ECF No. 130). Plaintiff is proceeding *pro se*, however, and is not expected to know all of the procedural nuances of federal civil litigation. As a *pro se* litigant, Plaintiff is entitled to some leeway, although that leeway is not unlimited and he is not excused from substantial compliance with the rules of procedure. On the other hand, Plaintiff's various filings would not seem to have been made in bad faith or with intent to slow or muddle the litigation, and this Court should perhaps have taken an earlier step back to reassess and clarify the state of the confusing record, which is what this Memorandum and Order endeavors to do.

2012 at (ECF No. 79), of his motion for an extension of time to file another, more detailed amended complaint. This Order described the "dilatory tactics by Plaintiff that have caused such delays in adjudicating this case," listed the numerous extensions of time previously granted Plaintiff to file a comprehensive amended complaint, and stated, in most relevant part:

> On July 31, 2012, Plaintiff filed yet another motion seeking reconsideration of his motion for an extension of time to file his amended complaint (ECF no. 79) and yet another "Letter in Application" to the Court (ECF No. 80). With these pleadings, Plaintiff included an *Amended Complaint dated July 15, 2012*, along with a large packet of what appear to be original documents pertaining to grievances he has filed.
>
> This Court must move this litigation as over two years has passed since the complaint was filed. *Accordingly, the Amended Complaint will be docketed and will be the operative Complaint in this proceeding*. . . . Accordingly, the following order is entered.
>
> AND NOW, this 6th day of August, 2012:
>
> IT IS HEREBY ORDERED that Plaintiff's motion for an extension of time [to file] another amended complaint is DENIED.
>
> IT IS FURTHER ORDERED that the Clerk of Court file *the Complaint dated July 15, 2012* as an Amended Complaint, *which document shall serve as the operative complaint in this matter.*

Order of August 6, 2002 (ECF No. 82), at 4-5 (emphasis added).

Following an active period of pretrial discovery and a variety of motions (e.g., a motion for recusal of the Magistrate Judge (ECF No. 89)), and a number of unsuccessful appeals by Plaintiff, *see* (ECF Nos. 83-131), the Commonwealth defendants filed a motion to schedule a mediation (ECF No. 132), which this Court granted. On November 20, 2012, this Court convened a mediation at SCI-Greene, at which Plaintiff and representative defendants for the categories of defendants, with their counsel, attended. Minute Entry (ECF No. 138). The mediation was unsuccessful for the most part, although Plaintiff agreed to withdraw any claims against Dr. Asad Kahn, M.D. *Id.* and Order of November 21, 2012 (ECF No. 139).

3

Shortly after the mediation, however, Plaintiff had a change of heart (or at least a change of strategy) and filed a "Motion for Partial Voluntary Dismissal/ and or Notice of Voluntary Dismissal" (ECF No. 140), which stated, in its entirety and verbatim, as follows:

> 1. Plaintiff, wish to voluntarily dismiss all claims except claims as to Superintendant Folino, PA DIggs, Anotonich/Lukas [sic[3]]and Dr. Jin, for failure to provide treatment and or to provide timely adequate and appropriate treatment as to Plaintiff's Lump in chest, ringing of ears, mask on face and knot in right testicle. And Dr. Jin, PA Diggs and PA Lukas, failure to educate patient as to risk and side effects of medication prior to them being issued to the patient. Also above defendants failure to act, as to the denial and failure to provide medical treatment, that is still needed today.
>
> 2. If item number one of this document, voluntary dismissal of all claims except claims mention in item number one, can not be granted or is contrary to Federal rules of civil procedures and the law. "THEN PLAINTIFF VOLUNTARY DISMISS THIS CASE" Subject to Rules 23(e), 23.1(c), 23.2 and 66 and any applicable Federal statute, as Plaintiff voluntary dismissal is without order of the court and before service by the adverse party of an answer or motion for summary of judgment. A voluntary dismissal that should be deemed without prejudice.
>
> Wherefore, for the foregoing reasons, Plaintiff request the partial voluntary dismissal be granted as mentioned in item one of this document and or recognize "NOTICE OF VOLUNTARY DISMISSAL" of the entire case be docket and filed pursuant to Rule 41(a)(1), (a)(i) F.R.Civ.P. without prejudice.
>
> s/ Darien Houser . . .

Motion for Partial Voluntary Dismissal/ and or Notice of Voluntary Dismissal (ECF No. 140), at 1-2.

On December 5, 2012, this Court granted Plaintiff's motion, stating:

> IT IS HEREBY ORDERED that plaintiff's Motion for Partial Voluntary Dismissal (ECF No. 140) is GRANTED.
>
> IT IS FURTHER ORDERED that the only remaining defendants, as identified by the plaintiff, are: Superintendent Folino, PA Diggs, Lucas/Antonich [sic] and Dr. Jin. All other defendants are dismissed, with prejudice.

---

[3] Plaintiff apparently is referring to CRNP Michelle Lucas Antanovich.

> IT IS FURTHER ORDERED that claims, other than those claims described in paragraph 1 of plaintiff's Motion for Partial Voluntary Dismissal, are likewise dismissed, with prejudice.
>
> IT IS FURTHER ORDERED that this Court's Order of November 30, 2012 is hereby vacated and the remaining defendants shall answer or otherwise respond to plaintiff's remaining claims on or before January 11, 2013.

Order of December 5, 2012 (ECF No. 144).

## II. Legal Standards

### A. Discovery

The Supreme Court has held that *pro se* complaints should be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Thus the courts are required to liberally construe a *pro se* litigant's pleadings, *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011), and are "especially likely to be flexible when dealing with imprisoned *pro se* litigants. Such litigants often lack the resources and freedom necessary to comply with the technical rules of modern litigation." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013) (citing *Moore v. Florida*, 703 F.2d 516, 520 (11th Cir. 1983)). However, while "district courts are counseled to liberally construe *pro se* pleadings, all parties must follow the Federal Rules of Civil Procedure." *Thomas v. Norris*, 2006 WL 2590488, *4 (M.D. Pa. 2006). Leniency "has its limits and litigants, even those appearing *pro se*, 'cannot flout procedural rules - they must abide by the same rules that apply to all other litigants.'" *Serrano v. Pigos*, 2013 WL 655741 (M.D.Pa. 2013) (quoting *Mala,* 704 F.3d at 245 (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993))).

Regarding discovery, this Court recently summarized the guiding principles as follows:

> Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with "the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451. The polestar of discovery is relevance, which, for discovery purposes, is interpreted

broadly. All relevant material is discoverable unless an applicable evidentiary privilege is asserted. *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). When there is no doubt about relevance, a court should tend toward permitting discovery. *Heat and Control Inc. v. Hester Industries. Inc.,* 785 F.2d 1017, 1024 (Fed.Cir. 1986) (citing *Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556, at 556 (7th Cir. 1984)).

*Blackstone v. Thompson*, 2013 WL 795040, *2 (W.D.Pa. 2012) (discussing Rules 26, 34 and 37 of the Federal Rules of Civil Procedure, and applying them to a number of discovery requests/disputes in prisoner litigation).

A court should consider a prisoner-litigant's inability to gather facts relevant to the proof of his claim and should be sensitive to his discovery difficulties. *Montgomery v. Pinchak*, 294 F.3d 492, 503-04 (3d Cir. 2002) (citing *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993)). However, "[p]ro se litigants must follow the same rules of procedure that govern other litigants," *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), including the discovery rules. *Honeycutt v. Snider*, 2011 WL 6301429, *3 (D.Nev. 2011).

### B. Rule 41(a), Dismissal of Actions

Rule 41(a)(1) provides that a Plaintiff may voluntarily dismiss a case without prejudice by filing a Notice of Voluntary Dismissal:

> (A) Without a Court Order. Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the *plaintiff may dismiss an action without a court order by filing*:
>
> (i) *a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment*; or
>
> (ii) a stipulation of dismissal signed by all parties who have appeared.
>
> (B) Effect. *Unless the notice or stipulation states otherwise, the dismissal is without prejudice*. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

> (2) By Court Order; Effect. Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.

Fed.R.Civ.P. 41(a)(1)(A) and (B).

The effect of Plaintiff's filing a notice of voluntary dismissal before the opposing party serves "either an answer or a motion for summary judgment is automatic; the notice is not a motion, defendant does not file a response, and no order of the district court is needed to end the action." *In re Bath and Kitchen Fixtures Antitrust Litig.*, 535 F.3d 161, 165 (3d Cir. 2008). Moreover, with one exception not applicable here, a timely notice of voluntary dismissal is without prejudice. *Id*. As the Court of Appeals for the Third Circuit summarized in the *In re Bath and Kitchen Fixtures* case:

> Three key aspects of Rule 41(a)(1)(A)(i) control our analysis. First, a filing under the Rule is a notice, not a motion. Its effect is automatic . . . . Second, the notice results in a dismissal without prejudice (unless it states otherwise), as long as the plaintiff has never dismissed an action based on or including the same claim in a prior case. Third, the defendant has only two options for cutting off the plaintiff's right to end the case by notice: serving on the plaintiff an answer or a motion for summary judgment.
>
> \* \* \*
>
> The Rule "affixes a bright-line test to limit the right of dismissal to the early stages of litigation," . . . , which "simplifies the court's task by telling it whether a suit has reached the point of no return. If the defendant has served either an answer or a summary judgment motion it has; if the defendant has served neither, it has not." . . . Up to the "point of no return," dismissal is automatic and immediate - the right of a plaintiff is "unfettered. . . ." A timely notice of voluntary dismissal invites no response from the district court and permits no interference by it. . . . A proper notice deprives the district court of jurisdiction to decide the merits of the case.

535 F.3d at 165-66 (footnotes and citations omitted).

### III. Application of Legal Standards

#### A. Remaining Claims and Defendants

Although Plaintiff herein styled his Notice of Voluntary Dismissal a "Motion for Partial Voluntary Dismissal/ and or Notice of Voluntary Dismissal" (ECF No. 40), "Plaintiff is *pro se*, so we liberally construe[ ] the motion for what it really was, a notice of dismissal under Fed.R.Civ.P. 41(a)(1)(A)(i)." *Collins v. Lincoln Caverns, Inc.*, 2011 WL 4625552, *2 (M.D.Pa. 2011) (citing, *inter alia*, *Ventura–Vera v. Dewitt*, 417 Fed. App'x 591, 591–92 (8th Cir. 2011) (liberally construed, *pro se* plaintiff's motion to dismiss was effectively a Rule 41(a)(1)(A)(i) notice of dismissal); *Carter v. United States*, 547 F.2d 258, 259 (5th Cir. 1977) (it is irrelevant that a *pro se* plaintiff's notice was styled as a motion rather than as a notice or that he invoked Rule 41(a) (2) instead of Rule 41(a)(1)(A)(i) if the motion was really a notice of dismissal under the latter rule)). Because defendants had not answered or filed a motion for summary judgment at the time, Plaintiff had a right to voluntarily dismiss any or all of his claims without prejudice. The Order of December 5, 2012 (ECF No. 144) must be vacated, therefore, because it purported to dismiss all claims other than those described in paragraph one of Plaintiff's Motion for Partial Voluntary Dismissal "with prejudice." Plaintiff's claims were voluntarily dismissed without prejudice when he filed his Notice of Voluntary Dismissal, by operation of Fed.R.Civ.P. 41(a)(1), *Manze v. State Farm Ins. Co.*, 817 F.2d 1062, 1066 (3d Cir. 1987) ("only an answer or a summary judgment motion can extinguish a plaintiff's right to dismiss the complaint without prejudice"), and this Court had no authority to dismiss them with prejudice.

However, vacating said order has no practical effect upon *this* litigation in terms of the claims and defendants remaining in the suit. "Dismissal without prejudice" is a dismissal that does not operate as adjudication upon the merits, and thus does not have *res judicata* effect precluding

Plaintiff from bringing suit in another forum. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990). *See also City of So. Pasadena v. Mineta*, 284 F.3d 1154 (9th Cir. 2002) (voluntary dismissal without prejudice left situation as if prior action had never been filed, and thus did not carry over to subsequent suit brought by city that involved similar claims); *Humphreys v. United States*, 272 F.2d 411 (9th Cir. 1959) (voluntary dismissal of claims and/or parties not an adjudication on the merits, and under Federal Rules of Civil Procedure, leaves situation as if no action had ever been filed); *Beck v. Caterpillar Inc.,* 855 F.Supp. 260 (C.D.Ill.), *aff'd* 50 F.3d 405 (7th Cir. 1993) (same). Although dismissed without prejudice, Plaintiff cannot resurrect in this action any of his voluntarily dismissed claims against any remaining defendant or any claims against any voluntarily dismissed defendant.

From the foregoing, the only remaining defendants and claims are those described in paragraph one of Plaintiff's Notice of Partial Voluntary Dismissal, namely:

1. Claims as to Superintendant Louis S. Folino, PA Diggs, CRNP Michelle Lucas Antanovich and Dr. S. Jin, M.D., Medical Director, "for failure to provide treatment and or to provide timely adequate and appropriate treatment as to Plaintiff's Lump in chest, ringing of ears, mask on face and knot in right testicle."

2. Claims as to Dr. Jin, PA Diggs and CRNP Lucas Antanovich, for "failure to educate patient as to risk and side effects of medication prior to them being issued to the patient."

3. "[A]bove defendants['] failure to act, as to the denial and failure to provide medical treatment, that is still needed today."

### B. Discovery Disputes

The discovery disputes will be decided *seriatim*, with reference to the remaining claims and defendants.

**1. "Plaintiff's Objections & Response to Magistrate Judge Order and Defendants' Response to Plaintiff's Objections." (ECF No. 169)**

The relief requested in this deemed discovery motion is GRANTED in part and DENIED in part, as stated below.

This discovery motion revisits previous discovery requests and challenges the Court's rulings on those requests, suggesting that the Court is biased and engages in "a pattern of misleading statements made in court orders." This motion also appears to be, in large part, an attempt to "clarify" the record for any appeal. *Id*. at 1. On March 19, 2013, this Court entered an Order (ECF No. 161), stating:

> Presently pending before the Court is a Motion for Leave to File Discovery Request by Plaintiff (ECF No. 157) and Emergency Supplement (ECF No. 160). This case was filed almost three years ago and the Court will not extend discovery any longer in this case. For the reasons set forth in Defendants' responses to Plaintiff's discovery requests, his Motion for further discovery (ECF No. 157) is GRANTED to the extent that Defendants agreed to provide Plaintiff with his requests and DENIED to the extent that Defendants objected to his requests. His request for information that would provide the wattage for the florescent lighting in the POC cells (ECF No. 160) is GRANTED. His request for security video is DENIED as irrelevant to his claims.
>
> IT IS FURTHER ORDERED that discovery is closed and no further discovery will be allowed in this case.

Subsequently, Mr. Houser filed "Plaintiff's Objective Response to Magistrate Judge Order & Defendants' Response to Plaintiff's Discovery Request" (ECF No. 162), which this Court treated as a motion for reconsideration, and denied most of the relief requested because he offered no grounds for reconsideration. Instead, this motion simply expressed disappointment with the Court's discovery rulings against Plaintiff, and repeated his requests. The Court did grant the motion in limited part, to

the extent that it sought to discover Dr. Jin's "credentials," and directed Dr. Jin to produce his CV to Plaintiff. Order Of Court Denying in Part and Granting in Part Plaintiff's Deemed Motion For Reconsideration (ECF No. 162), at 1.

This Order of Court also denied Plaintiff's request to reconsider its Order of December 5, 2012 (ECF No. 144) which granted his motion for partial voluntary withdrawal with prejudice, and his request to revisit its text-only Order of December 21, 2012 granting Plaintiff's motion to amend his complaint "only to the extent that it explains allegations against Defendants Folino, Diggs, Lucas-Antonich [sic] and Dr. Jin that were in the prior Complaint," but otherwise denying the motion "to the extent that it contains allegations against any other persons and to the extent it makes allegations which may post date the Original Complaint." (Plaintiff had, for instance, requested the Court grant him leave to add a claim for failure to properly train and supervise staff.)

Initially, "Plaintiff's Objections & Response to Magistrate Judge Order and Defendants' Response to Plaintiff's Objection" appears to be yet another attempt to have the Court reconsider its previous rulings and its characterizations of Plaintiff's filings. (ECF No. 169), at ¶ 1(a)-(g). Plaintiff offers no new facts or argument that would justify reconsideration, and for the reasons previously stated, the Court declines the invitation to reconsider its previous rulings.

Plaintiff argues that this Court misconstrued and improperly narrowed his request for "disciplinary records and credentials of Dr. Jin, PA Diggs and PA Antonovich (sic)" by ordering defendants to provide only Dr. Jin's CV to Plaintiff, and that he is entitled to have records of any "complaints, grievances and disciplinary sanctions" against these medical providers because he once got disciplinary records of "POLICE SWAT OFFICERS IN A CIVIL TRIAL." Discovery Motion (ECF No. 169), at 2 (upper case letters in original). The Court notes that Plaintiff did not then, and does not now, offer any specific averments about any "complaints, grievances and disciplinary

11

sanctions" that might help him nor did he attempt to show how such information might be relevant to his case. Moreover, without identifying what it is, Plaintiff argues that Dr. Jin's disciplinary record is public information, and so is not confidential, privileged or a security issue. *Id*.

In short, Plaintiff has launched a fishing expedition seeking to net any negative information about Dr. Jin and his assistants that might exist, but has not identified any particulars about the information he seeks nor has he made any proffers from which this Court might be able to make an informed decision about relevancy and discoverability. Plaintiff vague and conclusory speculation about the existence and value of "complaints, grievances and disciplinary sanctions" against Dr. Jin and his assistants ("*some may* show similarity with claims in this case"; "Dr. Jin, has a lot of complaints that have been filed against him") offers no grounds for reconsideration in this regard. If the complaints and disciplinary records he seeks are indeed public and "well known," it behooved Plaintiff to mention at least some of them; his failure to do so precludes further pursuit of such information. And, it goes without saying that even if Plaintiff "once got disciplinary records of POLICE SWAT OFFICERS IN A CIVIL TRIAL," discovery in that "CIVIL TRIAL" has no bearing on his pending discovery requests.

Next, Plaintiff alleges the documents he received from defendants in response to his discovery requests and this Court's orders were incomplete, and that additional responsive documents must exist and are being withheld. Plaintiff's complaints may be categorized as follows: (1) defendants did not provide copies of *all* of his many grievances, and the discovery produced was more like four inches thick, not eight as defendants claimed;[4] Plaintiff speculates that a *complete* dossier of grievances *might* produce comparative inconsistencies and "excellent impeachment evidence"; (2) the "DC-17X Adjustment records" produced, which should include emergency medical calls, are incomplete, and defendants have not responded to his requests for his DC-14 and

---
[4] The Court does not consider any dispute over the thickness of the discovery produced to be material.

12

DC-15, which he claims is his "basic inmate record"; (3) outside medical records from Westmoreland County Hospital and EMTs were, Plaintiff assumes, reviewed by Dr. Jin, and this Court should order defendants to turn over the Hospital's and EMT's records, or to obtain them if they do not already possess them; (4) defendants should be required to provide him with diagrams or photos of infirmary cells in L and G blocks; in support of this request, Plaintiff offers his belief (without any factual basis) that the "magistrate Judge will or has done a walkthrough in the aforementioned areas" on the day of the mediation at SCI-Greene (which was on November 20, 2012, see (ECF No. 138); (5) defendants should be required to turn over copies of DOC Policy Nos. 6.5.1 and 6.5.8, which Plaintiff avers are necessary to show the differences in treatment between RHU and Capital housing inmates; (6) he is entitled to learn of all infirmary admissions from September 2011 and housing log books; and (7) generally, defendants documentary production so far has been deceptive, misleading and designed to make him look bad.

After considering defendants' responses, except as otherwise indicated, the Court finds that defendants have produced all responsive documents in their possession to which Plaintiff is entitled in this litigation. Even if some of the requested documents and records are incomplete or spotty, such as the DC-17X logs and medical records of third party providers that were not already in the Commonwealth Correctional Defendants' possession, defendants are not required to create documents they do not have.

However, medical records of third party providers that the medical defendants consulted and reviewed in making treatment decisions related to Mr. Houser's complaints about his treatment would appear to be arguably relevant and material to Plaintiff's remaining claims. The medical defendants do not challenge this request on the grounds of relevancy or undue burden, nor do they assert that Plaintiff's request is untimely because he did not previously request the records. Medical

Defendants' Response to Plaintiff's Objections (ECF No. 180, ¶ 4); Medical Defendants' Response to Motion [(ECF No. 162)] for Leave to File Discovery (ECF No. 163). Medical defendants object only for the reasons set forth in the Commonwealth Correctional Defendants' Response at (ECF No. 174), namely that "to the extent Westmoreland Hospital records were contained in the DOC medical file, they were produced. But as the Court correctly ruled, defendants are under no obligation to obtain outside records for plaintiff." *Id*., at ¶ 8. Given the medical defendants' response, it seems that any Westmoreland Hospital and EMT records in these defendants' files have similarly been produced, but the Court will direct them to review their files again, and if any additional records are found that have not been photocopied and produced, to do so on or before August 19, 2013.

Although the Court has no reason to doubt the Commonwealth Correctional Defendants' characterization of Policy Nos. 6.5.1 and 6.5.8 as confidential internal working procedures for dealing with Security Level 5 RHU inmates and Capital case inmates, out of an abundance of caution, the Court will direct Superintendent Folino to deliver these policies to chambers for in camera review on or before August 19, 2013, and certify to the Court that they have done so.

2. **"Response to Magistrate Judge Amend Case Management Order." (ECF No. 170)**

In this motion, Plaintiff first complains that defendants' responses to his Objections at (ECF No. 162), were not timely. He requests no relief, nor would any relief seem appropriate.

Next, Plaintiff seems to object to having to provide to defendants copies of documents he intends to use in his response to motions for summary judgment, and instead, intends to "mention each document as an exhibit in his pleadings to the court." Response to Magistrate Judge Amend Case Management Order." (ECF No. 170, at ¶ 2). Plaintiff also states his intention to use as an exhibit a 500 page ledger he created that he cannot afford to copy. Plaintiff is required to produce and to file, not merely to "mention," any exhibits he intends to rely upon to support his opposition to

summary judgment, which exhibits will be scanned to the ECF docket. Defendants' copies will be the scanned exhibits.

Plaintiff also requests to be relieved of his obligation to file memoranda of law because he is not an attorney and is not qualified to litigate nor knowledgeable as to making an appendix. As defendants correctly respond, and as set forth in the legal discussion above, *pro se* plaintiffs must follow the applicable rules of civil procedure, including Fed.R.Civ.P. 56, and Plaintiff has proven himself quite capable of comprehending the rules of procedure and of litigating his claims.

Other matters mentioned or complained of in this motion do not request affirmative relief or have not actually ripened into a material dispute.

The relief requested in this motion is therefore DENIED.

3. **"Notice" (ECF No. 171)**

This Notice concerns a problem at SCI-Greene with delivery of Dr. Jin's CV to Plaintiff in response to this Court's previous order. After considering defendants' responses, the Court is comfortable with the arrangements made for Mr. Houser to hand copy Dr. Jin's CV, instead of maintaining a photocopy in his possession. Although Mr. Houser initially rejected this arrangement, *see* Plaintiff Response to Defendant Folino's Objection (ECF No. 182), the Court finds the procedure reasonable and acceptable. Superintendent Folino should provide Plaintiff with another opportunity to hand copy Dr. Jin's CV, and certify to the Court whether he has done so on or before August 19, 2013. The relief requested in this deemed motion is therefore DENIED.

AND NOW, this 30th day of July, 2013, IT IS SO ORDERED.

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all counsel of record

    Darien Houser
    GL-7509
    175 Progress Drive
    Waynesburg, PA 15370