IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARIEN HOUSER,                              )
    Plaintiff,                          )
                                        )
    v.                                  )    Civil Action No. 10-0416
                                        )    Magistrate Judge Cynthia Reed Eddy
LOUIS S. FOLINO, Superintendent,            )
SCI-Greene, DR. JIN, MD, PA DIGGS,          )
and  LUCAS-ANTONICH,[1]                      )
    Defendants.                         )
                                        )

**REPORT AND RECOMMENDATION TO DENY MOTIONS
FOR SUMMARY JUDGMENT (ECF NOS. 193, 198)**

I.    **Recommendation**

For the reasons set forth in this Report and Recommendation, the motions for summary

judgment filed on behalf of Superintendent Louis S. Folino (ECF No. 193), and the Medical

Defendants (ECF No. 198) should be denied.

II.    **Report**

A.    **Pertinent Procedural History and Background**

**Amended Complaint (ECF No. 81) - The Operative Complaint**

Plaintiff Darien Houser filed his Amended Complaint, pro se, on July 31, 2012. (ECF No.

81). The Amended Complaint alleges claims arising from the Civil Rights Act of 1871, 42

U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. § 12101, and various state

trespass causes of action, and names dozens of defendants within the Pennsylvania Department

of Corrections at his place of confinement, SCI-Greene, each of whom is an official, corrections

---

[1] The Complaint initially named Jeffrey Beard, Secretary of the Department of Corrections, as the lead
defendant, but he and dozens of other defendants are no longer parties to this litigation, having been
voluntarily dismissed by Plaintiff.  The caption reflects the remaining Defendants only. The Defendant
identified as "Lucas-Antonich" would appear to be CRNP Michelle Lucas Antanovich, who will be
referred to as CRNP Antanovich.

1

officer, employee, agent or medical health care provider involved in treatment of Plaintiff's numerous medical ailments and requests for treatment and in processing related grievances. This Court designated the Amended Complaint as the "operative complaint," and directed the Clerk of Court to file it as such. Order of August 6, 2012 (ECF No. 82), at 4-5.

Following discovery, Commonwealth Department of Corrections defendants filed a motion to schedule a mediation (ECF No. 132), which this Court granted. On November 20, 2012, this Court convened a mediation at SCI-Greene, at which Plaintiff and representative defendants for the categories of defendants, with their counsel, attended. Minute Entry (ECF No. 138). The mediation was unsuccessful for the most part, although Plaintiff agreed to withdraw any claims against Dr. Asad Kahn, M.D. *Id.* and Order of November 21, 2012 (ECF No. 139).

Shortly after the mediation, however, Mr. Houser filed a "Motion for Partial Voluntary Dismissal/ and or Notice of Voluntary Dismissal" (ECF No. 140), which stated, in its entirety and verbatim, as follows:

> 1.      Plaintiff, wish to voluntarily dismiss all claims except claims as to Superintendent Folino, PA Diggs, [CRNP Michelle Lucas-Antanovich] and Dr. Jin, for failure to provide treatment and or to provide timely adequate and appropriate treatment as to Plaintiff's Lump in chest, ringing of ears, mask on face and knot in right testicle. And Dr. Jin, PA Diggs and PA Lukas, failure to educate patient as to risk and side effects of medication prior to them being issued to the patient.  Also above defendants' failure to act, as to the denial and failure to provide medical treatment, that is still needed today.

> *        *        *

> Wherefore, for the foregoing reasons, Plaintiff request the partial voluntary dismissal be granted as mentioned in item one of this document and or recognize "NOTICE OF VOLUNTARY DISMISSAL" of the entire case be docket and filed pursuant to Rule 41(a)(1), (a)(i) F.R.Civ.P. without prejudice.

Plaintiff's Motion for Partial Voluntary Dismissal/ and or Notice of Voluntary Dismissal (ECF No. 140), at 1-2.

On December 5, 2012, this Court entered an order stating "plaintiff's Motion for Partial Voluntary Dismissal (ECF No. 140) is GRANTED," and noting "that the only remaining defendants, as identified by the plaintiff, are: Superintendent Folino, PA Diggs, Lucas/Antonich [sic] and Dr. Jin. All other defendants are dismissed, with prejudice." The Order further stated "that claims, other than those claims described in paragraph 1 of plaintiff's Motion for Partial Voluntary Dismissal, are likewise dismissed, with prejudice." Order of December 5, 2012 (ECF No. 144).

Rule 41(a), Dismissal of Actions, provides that a Plaintiff may voluntarily dismiss a case without prejudice by filing a Notice of Voluntary Dismissal, and that the plaintiff may dismiss an action without a court order by filing (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared. Fed.R.Civ.P. 41(a)(A). Generally, unless the notice or stipulation states otherwise, the dismissal is without prejudice. Fed.R.Civ.P. 41(a)(1)(B).

Although Plaintiff herein styled his Notice of Voluntary Dismissal a "Motion for Partial Voluntary Dismissal/ and or Notice of Voluntary Dismissal" (ECF No. 40), it was actually a notice of dismissal under Fed.R.Civ.P. 41(a)(1)(A)(i)." *See Collins v. Lincoln Caverns, Inc.*, 2011 WL 4625552, *2 (M.D.Pa. 2011) (citing, *inter alia*, *Ventura–Vera v. Dewitt*, 417 F. App'x 591, 591–92 (8th Cir. 2011) (liberally construed, *pro se* plaintiff's motion to dismiss was effectively a Rule 41(a)(1)(A)(i) notice of dismissal)). Because Defendants had neither answered nor filed a motion for summary judgment at the time, Plaintiff had a right to voluntarily dismiss any or all of his claims without prejudice. For that reason, this Court vacated its Order of December 5, 2012 (ECF No. 144), because it purported to dismiss all claims other than those

described in paragraph one of Plaintiff's Motion for Partial Voluntary Dismissal "with prejudice." Memorandum and Order Regarding Discovery Motions (ECF No. 184).

**Remaining Claims and Defendants**

From the foregoing, the only remaining defendants and claims are those described in paragraph one of Plaintiff's Notice of Partial Voluntary Dismissal, namely:

Claims as to Superintendent Louis S. Folino, PA Diggs, CRNP Michelle Lucas Antanovich and Dr. Byunghak Jin, M.D., Medical Director, "for failure to provide treatment and or to provide timely adequate and appropriate treatment as to Plaintiff's lump in chest, ringing of ears, mask on face and knot in right testicle," and claims as to Dr. Jin, PA Diggs and CRNP Lucas Antanovich, for "failure to educate patient as to risk and side effects of medication prior to them being issued to the patient." For purposes of addressing the summary judgment motions, the Court will refer to these remaining claims for failure to provide timely and appropriate treatment of the several medical conditions as follows: (a) lump in chest, or breast enlargement; (b) ringing of ears, or tinnitus; (c) mask on face; and (d) knot in testicle. Additionally, (e) the failure to educate patient as to side effects of medication before administering them to Plaintiff, with resulting negative consequences of which Plaintiff complains, may be treated as a fifth claim.[2]

---

[2] Interspersed throughout the filings and summary judgment record in this case are references to acquired angioedema, a potentially life threatening condition with which Plaintiff has been diagnosed and which, he believes, was caused by various medications prescribed him at SCI-Greene without explaining the potential side effects to him. The angioedema and alleged failure to properly treat the condition is one of the many subjects of another lawsuit by Mr. Houser against a host of DOC officials, employees, agents and Medical Defendants at SCI-Greene. *Houser v. Pennsylvania Department of Corrections, et al.*, 13-cv-1068 (W.D.Pa.).

**B. Motions for Summary Judgment**

**1. Superintendent Folino's Motion for Summary Judgment (ECF No. 193)**

In his Motion for Summary Judgment, Superintendent Folino argues that Mr. Houser cannot prevail on his claim for deliberate indifference to his serious medical needs under the Eighth Amendment because at best, Plaintiff's complaints about his medical care amount to "mere disagreement" with the physician's diagnosis and treatment plans, and that prison officials who are not physicians, such as Superintendent Folino, cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already under the care of medical personnel including physicians. More specifically, Superintendent Folino argues as follows:

> [T]he record demonstrates that plaintiff was under the care of medical staff and *received an extraordinary amount of professional medical treatment and attention for a long list of medical issues, including blood pressure, weight related issues, complaints of swelling, breast enlargement and tinnitus.*[FN 2] . . .
>
> The medical records from 2009 through mid-2012 reveal a similar scenario, in which plaintiff had ready access to health care, and medical professionals addressed his complaints and provided appropriate care, notwithstanding his repeated challenges and non-compliance . . . .
>
> ———
>
> [Footnote 2] There are sporadic references in plaintiff's medical chart, mostly prior to March 2008, of a testicle lump or wart and face mask, but counsel cannot locate these particular issues in a grievance that was appealed to Folino. As with his other medical issues, these are conditions where plaintiff was examined and merely disputes the treatment recommended.

Brief for Defendant Folino (ECF No. 194), at 3-4 (emphasis added).

Moreover, Defendant Folino asserts there is "no evidence to suggest . . . [he] had a reason to believe, or actual knowledge, that medical personnel were not treating  or mistreating plaintiff.

. . . While Folino may have had general knowledge of plaintiff's medical condition and problems, through grievances and otherwise, that knowledge is not enough to sustain liability under the Eighth Amendment. Moreover, that knowledge, as reflected above, included constant reports that plaintiff was being treated and followed closely by professionals." *Id.*, at 7.

### 2. Medical Defendants' Motion for Summary Judgment (ECF No. 198)

Medical Defendants, Dr. Byunghak Jin, "PA Diggs," and CRNP Michelle Lucas Antanovich, filed a Motion for Summary Judgment seeking judgment in their favor on the basis of the governing two year statute of limitations and, on the merits, because "even if one assumes a serious medical condition, Plaintiff has failed to allege facts that would permit a jury to conclude that the medical defendants *subjectively* acted with a sufficiently culpable state of mind. Medical Defendants' Brief in Support of Motion for Summary Judgment (ECF No. 199) at 7 (emphasis in original).

Further, Medical Defendants argue that the "allegations in plaintiff's amended complaint clearly demonstrate *continuous medical treatment from that time forward for various complaints*, with plaintiff essentially arguing that it was either ineffective or not what he had specifically requested. As such, Medical Defendants cannot be said to have intentionally refused to provide any medical treatment." *Id.*, at 9 (emphasis added). According to these Defendants, the "continuous medical treatment" Plaintiff has received insulates them from liability under section 1983 because "deliberate indifference is generally not found when *some level* of medical care has been offered to the inmate." *Id.*, (emphasis added) (citing *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D.Pa. 2000)). Because "Plaintiff received care for his various physical complaints . . . [any] attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional

judgment." *Id.*, (citing *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)).

### 3. Defendants' Theme

The overarching theme of Defendants' briefs in support of their motions for summary judgment may be fairly characterized as follows: Mr. Houser received "an extraordinary amount" of continuous, professional medical treatment and attention "for a long list of medical issues" from 2007 to the present. *Ipso facto*, Superintendent Folino and Medical Defendants cannot be found to have been deliberately indifferent to any of Plaintiff's serious medical needs.

### C. Defendants' Concise Statements of Material Facts

The Local Rules of Civil Procedure requires each motion for summary judgment to be accompanied by

> a separately filed concise statement setting forth the facts essential for the Court to decide the motion for summary judgment, which the moving party contends are undisputed and material, including any facts which for purposes of the summary judgment motion only are assumed to be true. The facts set forth in any party's Concise Statement shall be stated in separately numbered paragraphs. A party must cite to a particular pleading, deposition, answer to interrogatory, admission on file or other part of the record supporting the party's statement, acceptance, or denial of the material fact[.]

LCvR 56.B.1.

Superintendent Folino's Concise Statement of Material Facts ("CSMF") sets out the following facts which, he claims, are undisputed and material. The first of these repackages Defendants' mantra as a fact: "During the time frame at issue in this action (March 2008 through mid-2012), plaintiff was under the care of medical staff at SCI-Greene and received an extraordinary amount of professional medical treatment and attention for a long list of medical issues, including blood pressure, weight related issues, complaints of swelling, breast enlargement and tinnitus." Folino CSMF, (ECF No. 195), ¶ 2. Superintendent Folino next

7

prefaces discussion of Plaintiff's actual treatment with the assertion that many of the "medical staff's examinations and discussions with plaintiff centered on his non-compliance with medications" and, in support thereof, he cites to "(Exh's 15-19 and 22)" of his Appendix. *Id.*, ¶ 3.

The "specific" facts alleged to be undisputed and material are set forth below.

4. In 2008, plaintiff was seen at sick call by a nurse, Physician's Assistant or medical doctor over 35 times (which excludes the 3 weeks he spent in the infirmary in April and May 2008 while waiting for a new wheelchair). (Exh. 15.)

5. Dr. Jin examined and met face to face with plaintiff on at least 6 different occasions in 2008 (not to mention the numerous visits in the infirmary), and addressed plaintiff's *sore throat, his concerns with medications, his refusal to take medications, and a knee brace*. (Exh. 15, entries for 1/24, 2/7, 3/14, 9/8, 10/27, 11/24.)

6. Dr. Jin's entries on 1/31/08 reflect that *he believed plaintiff's enlarged breast was due to gynecomastia, based on the previous ultrasound that he had ordered.* (Exh. 15.)

7. Plaintiff's medical records from 2009 through mid-2012 reveal a similar scenario, in which plaintiff had ready access to health care, and medical professionals addressed his complaints and provided appropriate care, notwithstanding his repeated challenges and non-compliance. (Exh. 16-19 and 22.)

8. In 2009, plaintiff was seen at least 30 times on sick call (including 6 visits with physicians), *for blood pressure, back and knee braces, athletes foot, hand injury, double mattress*. (Exh. 16.)

9. In 2010, he was seen on sick call at least 60 times (including 17 or more visits with physicians). (Exh. 17.)

10. Drs Jin, Balk and Park saw plaintiff at least 12 times from July to November 2010 *for swelling and edema*, which would flare up and then resolve. (Exh. 17.)

\* \* \*

13. In 2011, plaintiff was seen by medical staff at least 45 times (including 16+ visits with physicians and multiple infirmary stays from 9/12 to 9/14, 9/23-9/26). (Exh. 18.)

14. Plaintiff was sent to Westmoreland Hospital on 9/21/11 *for his edema and throat/lip swelling*, and Dr. Gorby confirmed the *angioedema diagnosis.* (Exh. 19, entries for 9/21, Exh. 20 – consultations, and Exh. 21 – Westmoreland Hospital summary)

15. In 2012, plaintiff was seen for sick call at least 20 times through May (including 9 visits by Dr. Jin or other physicians). (Exh. 19.)

16. Plaintiff refused to come in from yard on several occasions to be seen by Dr. Jin pursuant to his sick call requests, and on one occasion, Dr. Jin even went to the yard to see plaintiff – e.g., entries for 1/23, 1/24, 1/27 in Exh. 19.

17. Numerous consultation records in plaintiff's medical chart reflect that medical staff at Greene *sent plaintiff for x-rays repeatedly*, and *referred him for physical therapy*. (Exh. 20.)

* * *

21. Folino was made aware as far back as 2007 that medical had ordered an ultrasound for plaintiff's complaint of a right chest lump, and that the medical director considered this diagnostic tool to be better than a mammogram. (Grievance 178743 - Exh. 2, p. 2-3; see also Exh. 14, p. 2 – Grievance 438919 dated 12/5/12, noting that after Dr. Jin discussed the results, gynecomastia or excess breast tissue, plaintiff had no further complaints.)

22. Also, *Superintendent Folino would have noted that medical (Dr. Caramanna) was following plaintiff for his claim of tinnitus* (ringing in the ears). (Grievance 206763 – Exh. 3, p. 4-5.)

23. In response to a grievance in 2010, the Nursing Supervisor explained that *Mr. Houser had an audiogram for his tinnitus complaint* in 2007, and the results were "not clinically significant." (Grievance 337961 – Exh. 8, p. 2, 3.)

24. Significantly, even though a referral had been made for an evaluation by the MD on 10/7/10, just two days after reporting the tinnitus to staff, plaintiff had failed to show up for this MD follow up. (Exh. 8, p. 4; and Exh. 9.)

25. Folino would have been made aware that Dr. Jin and the medical staff were treating plaintiff for his *complaints of swelling* and were taking seriously his *concerns with medications*. (Grievance 325716 – Exh. 6, p. 3-4.)

26. Grievance 330215 reflected the fact that plaintiff was seen on 8/6/10 by Dr. Balk, who diagnosed him with *Acquired Angioedema*, . . .

* * *

28. In September 2011, plaintiff was sent to Westmoreland Hospital for his complaints of *throat and lip swelling* out of an abundance of caution, even though Dr. Jin felt that the condition could be treated at the institution. (Exh. 11 – Grievance 382003; Exh. 12 – Grievance 383701; Exh. 13, p.2 – Grievance 338703.)

29. Plaintiff's grievances and responses also revealed that plaintiff was *refusing medications, as well as treatment*. (Exhibits 4 and 5; Exh. 22.)

Folino CSMF (ECF No. 195), ¶¶ 4-29 (emphasis added).

Medical Defendants filed an ersatz concise statement of material facts, Medical Defendants' CSMF (ECF No. 200), which merely, and somewhat surprisingly, "incorporate[s] the Concise Statement of Undisputed Material facts previously filed by co-defendant Folino [ECF 195] as if more fully set forth herein, in support of medical defendants' motion for summary judgment." *Id*. Medical Defendants also stood pat on the summary judgment record adduced by Superintendent Folino, and did not submit any additional documents or other evidence in support of their motion.

Before proceeding to Plaintiff's response and counterstatement of material facts, the Court makes a few observations about the general nature of Defendants' concise statement of material facts and appendix, and what the concise statement and Appendix do not set forth. The Appendix consists of about 70 pages of grievances and grievance related and other administrative documents; about 210 pages of Progress Notes, medical reports and consultations and other medical records; and about 30 pages of "DC-462's Refusal of Medical Treatment" forms, which document Plaintiff's refusal to accept certain medical treatments, mostly medications.

The CSMF consists of references to and inferences from items included in the Appendix, but often in broad, non-specific terms, without specific or pinpoint citations to the record for the various "undisputed facts." For example, the concise statement references some "treatments" for

various conditions, including three of the five serious medical needs which are the subject of this lawsuit (breast enlargement, tinnitus and concerns about medications), but, for the most part, without directing the Court's attention to specific portions of the record to support these supposedly undisputed facts. The concise statement also includes statements such as: in 2009, "plaintiff was seen at least 30 times on sick call (including 6 visits with physicians), for blood pressure, back and knee braces, athletes foot, hand injury, double mattress"; in 2010, "he was seen on sick call at least 60 times (including 17 or more visits with physicians"; and "Drs Jin, Balk and Park saw plaintiff at least 12 times from July to November 2010 for swelling and edema, which would flare up and then resolve." Folino CSMF (ECF No. 195), ¶¶ 8-10. To support these supposedly undisputed facts, defendant references "(Exh. 16)" (36 pages of "2008 Progress Notes") and "(Exh. 17)" (27 pages of "2009 Progress Notes").

The Court also notes that Defendants have produced no affidavits, declarations, deposition testimony or expert medical reports explaining to the Court the meaning of the medical records or the reasonableness or efficacy of the treatments Defendants offer as being constitutionally adequate treatments for Plaintiff's serious medical needs. In other words, the record produced by Defendants in support of summary judgment is, essentially, an unauthenticated, unexplained accumulation of grievances, progress notes, reports and other medical documents, and refusal of treatment forms.

In keeping with their theme, Defendants describe the amount of care Plaintiff received as "extraordinary." There is nothing on the record that supports this subjective assessment. Given Plaintiff's many serious medical needs, including acquired angioedema which required frequent and urgent attention, *see* note 2, *infra*, this Court cannot say, on the record before it, that the amount of care Plaintiff received was "extraordinary." From the CSMF and the Appendix, it is

clear Plaintiff received a great deal of medical attention and care during the relevant time frame while incarcerated at SCI-Greene. What is *not clear* is whether he received medical attention and care for each of the ailments and serious medical conditions for which he sought treatment throughout that period and, for those serious medical needs for which he did receive treatment and care, whether it was constitutionally adequate.

### D. Plaintiff Houser's Response, Brief in Opposition and Statements of Material Facts

Although a layman, and although he claims he has been hamstrung by this Court's adverse rulings on many of his discovery requests, Plaintiff nevertheless managed to mount a cogent and effective response in opposition to Defendants' motions for summary judgment.

Initially, the Court notes that Plaintiff's factual averments are made from personal knowledge or belief, and are accompanied by his verification that "the matters alleged herein are true and correct, except as to those matters alleged on information and belief, and as to those I believe is true, I certify under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746 and 18 PA.C.S.A. § 4904." Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment & Plaintiff's Counter Claims, "Certificate of Statement" (ECF No. 204), at 23. (The "Counter Claims" are actually his Counter Statement, as is designated in the body of his Brief, and the Court will refer to them as such.) *See also* Plaintiff's Objection and Response to Defendants' Response to Plaintiff's Counter Statement (hereafter "Plaintiff's Response"), "Certificate of Statement" (ECF No. 207), at 4, and Amended Complaint, Declaration (ECF No. 81), at 22.[3] These declarations or verified statements are the equivalent of an affidavit for purposes of considering the motions for summary judgment. Fed.R.Civ.P.

---

[3] The declarations attached to the Amended Complaint and Plaintiff's Response do not use the same language Plaintiff used in the Certificate of Statement attached to his Counter Statement, but each declares that the statements of fact are made under penalty of perjury, and the latter references 28 U.S.C. § 1746.

56(c)(4) and Commentary to 2010 Amendments. Mr. Houser also attached an Appendix consisting of some 120 pages of grievances, progress notes, sick call slips, and medical reports, including Exhibit A, an ultra sound report by the radiologist who reviewed the ultrasound findings, Dr. Nathan Feldman, M.D. Plaintiff's Appendix (ECF No. 205).

The Court will not set forth Plaintiff's Counter Statement in great detail, but the following discussion of his major points of contention will suffice to demonstrate that there are genuine disputes of material fact on essential elements of his deliberate indifference claim that preclude this Court from recommending judgment for Defendants. Plaintiff summarizes his averments of fact as follows:

> Defendants Diggs, Anatanovich [sic], and Dr. Jin did not provide any treatment during (March 2008 through Mid-2012) for any of the remaining claims, as to Plaintiff's knot in testicle, ringing of ears, mask on face and right breast, nor did Defendant Folino, order defendants to provide treatment despite [Plaintiff's] many grievance complaints, "APPEALS TO FACILITY MANAGER" and request. . . . But (March 2008 through Mid-2012), is the time period which accrued the cause of action and a time period in which plaintiff continued to be in pain and continued to seek treatment for the same conditions that still exist today. Defendant Folino, was told about Plaintiff's conditions by Plaintiff personally (verbally) face to face prior to this period, and several times after times after March 2008 . . . . Still to date plaintiff's conditions remain while in constant pain and embarrassment. See (exhibits #1 and #2).

Plaintiff's Response (ECF No. 203), at ¶ 2.

**Missed Appointments.** Plaintiff takes issue with Defendants' attempts to portray him as someone who misses and fails to follow up on his appointments with Dr. Jin and others. As Mr. Houser explains, as a capital housing unit inmate, he does not come and go as he pleases and is strictly limited in his movements. Mr. Houser also states that capital housing unit prisoners are not told in advance of the times and dates of some of their medical appointments, for security reasons. It is misleading, therefore, to suggest that he "missed" any appointments, because a

corrections officer would had to have escorted him to his medical appointments at the appointed times. Unless that occurred, he could not "keep" his appointments. Id., at ¶ 24 ("Plaintiff was locked in his cell or on the housing area 24 hours a day, 'there is no such thing as a NO SHOW for anything, unless the officer just does not notify the prisoner.").

**Import of Progress Notes**. Plaintiff asserts that the mere fact that a doctor or other medical professional signs off on his progress notes does not mean he was, in fact, "seen" by the doctor or professional whose name is affixed by stamp to the notes. According to Plaintiff, "just because you see a Physician signature on a progress note and or Physician's orders forms does not mean that he actually visited the prisoner/patient or provided treatment. He could have just reviewed a chart or sick call request or signed off on a pre-existing request." *Id.*, at ¶ 15. Defendants suggest that some of the remarks, observations and notations made in his progress report show he was "seen" by the medical personnel, when in fact, many of those notations were made without actual examination or face to face contact with him. *Id.*, at ¶¶ 4, 15.

**Treatment for Tinnitus**. Plaintiff asserts he was never treated for tinnitus despite his continual complaints about pain, discomfort and the mental stress of the chronic ear ringing. Plaintiff asserts this condition developed as a result of medications prescribed him without explaining the potential side effects. Plaintiff's Counter Statement (ECF No. 204), ¶¶ 32-39. Plaintiff was given some ear drops, which burned his ears, and an audiogram. *Id.* Defendants did not send Plaintiff to an ENT specialist, nor is there any indication in the medical records that he ever received follow up care or additional diagnostic tests. *Id.*

Plaintiff takes issue with Defendants' assertion that in "response to a grievance in 2010, the Nursing Supervisor explained that Mr. Houser had an audiogram for his tinnitus complaint in 2007, and the results were 'not clinically significant.'" Folino CSMF (ECF No. 195), at ¶ 23. Mr.

Houser claims that, although the grievance may have used the words "not clinically significant," the progress notes actually said that the audiogram showed "no hearing loss." Plaintiff's Response (ECF No. 203), ¶¶ 22-23, citing Plaintiff's Exhibit 2, Progress Notes; Plaintiff's Counter Statement (ECF No. 204), ¶ 35. Moreover, Plaintiff states he never complained about hearing loss, and that an audiogram is not treatment for tinnitus in any event. *Id*.

**Ultrasound**. On the obvious, unsettling condition of the breast deformity/ lump in his chest, Plaintiff disputes Defendants' claim that the ultrasound is the preferable diagnostic tool, as opposed to a mammogram, which he has been requesting for years. From the results of the ultrasound, Dr. Jin opined that "plaintiff's enlarged breast was due to gynecomastia, *based on the previous ultrasound* that he had ordered." Folino CSMF (ECF No. 195) at ¶ 6 (emphasis added). It is on the basis of the ultrasound that Defendants argue Plaintiff "merely disagrees" with the test chosen by Dr. Jin between reasonable alternatives and his belief that the ultrasound is the better diagnostic tool.

Plaintiff counters that the April 25, 2007, radiologist report, upon which Dr. Jin relied, explicitly recommended a follow up by mammogram, and a biopsy if the mammogram showed anything suspicious. Plaintiff's Counter Statement (ECF No. 204), ¶¶ 19-22, citing Plaintiff's Appendix, Exhibit A (ECF No. 205-1), at 3. This exhibit is the report by Dr. Nathan Feldman, M.D., who examined the ultrasound administered by Lackawanna Mobile Diagnostic Services. It states:

> ULTRASOUND OF RT. BREAST – Ultrasonography of the right breast was obtained in the region of the right nipple and sub areolar area. No definite mass is identified. There does appear to be some prominence to the breast parenchyma. There is no evidence of ductal dilation or other definite abnormality identified.
>
> IMPRESSION – Prominence to breast parenchyma in the region of the right nipple, possibly related to gynecomastia, although other etiology is not excluded. There is no apparent mass of ductal dilation or other abnormality to suggest a malignant process.

If the patient has not has a recent mammogram, a mammogram would be suggested for further evaluation. Biopsy should not be deterred if a suspicious abnormality is found on physical examination.

Plaintiff's Appendix, Exhibit A (ECF No. 205-1), at 3.

Further, Plaintiff avers that Defendants never showed him the radiologist report or advised him of Dr. Feldman's opinion until 2012, when it was produced in discovery for this case. Plaintiff's Counter Statement (ECF No. 204), ¶ 19-22; Plaintiff's Response (ECF No. 204), ¶¶ 6, 21. Defendants do not dispute that statement of fact, made subject to the penalty of perjury.

**Mask on face and knot in testicle**. Plaintiff asserts that he complained to SCI-Greene officials and medical personnel about the unsightly "mask" or discoloration on his face, and about a painful knot in his right testicle, but that he has never been treated or evaluated for these conditions. Defendants do not dispute this statement of fact, made subject to the penalty of perjury. Plaintiff asserts he requested an ultrasound examination for the knot in his testicle but Defendants denied that request and did not order any diagnostic tests. Plaintiff's Counter Statement (ECF No. 204), ¶¶ 5-13; Plaintiff's Response (ECF No. 203), at ¶ 2.

### E. Defendants Response to Plaintiff's Counterstatement (ECF No. 206), and Plaintiff's Objection and Response to Defendants' Response (ECF No. 207)

Defendant Folino's Response to Plaintiff's Counter Statement (ECF No. 206), does not specifically refute any of Plaintiff's factual averments, although he denies every statement of fact.[4] The denials are on legal grounds, such as: "these paragraphs contain legal averments rather than factual matters. Further, the statements are not supported by any reference or citation to the record as required by the Rules." *Id.*, at ¶ 5, 7, 10-12, 25-26, 28-31, 32-40, 42. Other denials are

---

[4] Folino "initially object[s] to Plaintiff's 'counterstatement' as it is not set forth as a separate document but is part of his Brief in Opposition to Defendants' Motion for Summary Judgment." *Id.*, at 1. Defendant cites no authority and does not develop this objection, and because the pro se Plaintiff has substantially complied with the applicable rules of civil procedure and is given some leeway because of his pro se status, the Court will overrule the objection. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (pro se complaints should be held "to less stringent standards than formal pleadings drafted by lawyers").

based on the documents and grievances references speaking for themselves, or because they are immaterial or contain legal conclusions that need not be answered. *Id.*, at 6, 8-9, 13, 16-26, 28-31, 41-42.

Plaintiff filed a Response to Defendant Folino's Response (ECF No. 207), accompanied by a "Certificate of Statement" declaring that the Objection and Response is "true and correct" and made "[p]ursuant to 28 U.S.C. § 1746 . . . under penalty or [sic] perjury . . . ." *Id.*, at 4. In it, Plaintiff points out that, while all of his averments are made pursuant to 28 U.S.C. § 1746 and subject to the penalty of perjury, Defendants have not reciprocated:

> 6. Defendants have not provided any proof that treatment was provided of any kind, nor has any of the defendants submitted their own affidavits or declaration stating they have provided treatment, appropriate treatment, adequate treatment, or their reasons for their practice.

> 7. Plaintiff filed a declaration in his certificate of statement . . . . On the other hand, defendants have not filled their own affidavit or declaration and should not be able to get a summary judgment or any favorable response based on an attorneys affidavit or declaration.

Plaintiff's Response (ECF No. 207), ¶¶ 6-7.

Plaintiff also avers that Defendants "deliberately attempted to hide the <u>Ultra Sound report from the court</u>.  The defendants . . . did not want this court to know that a radiologist who reviewed the ultra sound report recommend/Suggest more appropriate treatment for plaintiff's lump in chest, a suggestion/request that plaintiff was never informed of by defendants despite plaintiff's plea and appeals for treatment to defendant Folino and medical defendants." *Id.*, at 2 (emphasis in original). Mr. Houser also avers that he has been in continuous pain and discomfort from the breast deformity and the knot in his testicle, which "hurts when doing everyday normal things such as washing body, the slightest touch, lying on stomach, putting a shirt on and taking it off, SITTING CAUSES PAIN."  *Id.* (capitalization in original).

### III. Legal Principles

#### A. Standards for Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ*., 470 F.3d 535, 538 (3d Cir. 2006)).

The non-moving party cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument, but must "put up or shut up." *Berckeley Inv. Group., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (quoting *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109-10 (3d Cir. 1985)). Plaintiff must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting *Anderson*, 477 U.S. at 251-52). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metropolitan Life Ins. Co*., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. *Williams v. Bor. of West Chester*, 891 F.2d 458, 460–461 (3d Cir. 1989) (non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).

A party claiming that a fact cannot be or is genuinely disputed must support that assertion either by:

> (A)     citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B)     showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

A "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2). An "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4).

Rule 56 was amended, effective December 2010, "to provide that a declaration, that is an unsworn statement subscribed to under penalty of perjury, can substitute for an affidavit." *Hayden v. Westfield Ins. Co.,* 2013 WL 5781121, *7, n.3 (W.D.Pa. 2013) (citing Fed.R.Civ.P. 56 Advisory Committee Note to 2010 Amendments ("Subdivision (c)(4) carries forward some of the provisions of former subdivision (e)(1). . . . A formal affidavit is no longer required. 28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit."); *Ray v. Pinnacle Health Hosps., Inc.,* 416 F. App'x 157, 164 n.8 (3d Cir. 2010) ("unsworn declarations may substitute for sworn affidavits where they are made under penalty of perjury and otherwise comply with the requirements of 28 U.S.C. § 1746").

It is the obligation of the parties to pinpoint specific portions of the record which they argue support their characterizations of the material undisputed facts and their positions. Rule 56(e) provides:

> (e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or

(4) issue any other appropriate order.

Similarly but somewhat more pointedly, under our local rules, a motion for summary judgment must be accompanied by "separately filed concise statement setting forth the facts essential for the Court to decide the motion for summary judgment, which the moving party contends are undisputed and material . . . . A *party must cite to a particular pleading, deposition, answer to interrogatory, admission on file or other part of the record* supporting the party's statement, acceptance, or denial of the material fact". LCvR 56.B.1 (emphasis added). The same is required of a plaintiff's responsive statement of material facts. LCvR 56.C.1. *See Bowman v. Mazur,* 2010 WL 2606291, * (W.D.Pa. 2010) ("Plaintiff's responsive statement of material facts is insufficient to create a genuine issue of material fact because it failed to comply" with Local Rule 56.C.1 in that it failed to cite to specific portions of the record. Court therefore ignored Plaintiff's denials in his responsive statement of material facts and deemed "admitted those very facts that he sought to deny.").

**Deliberate Indifference to Serious Medical Needs**

A state has a constitutional obligation to provide adequate medical care to those it has imprisoned. *West v. Keve*, 519 F.2d 158, 161 (3d Cir. 1978). As the United States Supreme Court stated in *Estelle v. Gamble*, 427 U.S. 97 (1976):

> Our more recent (Eighth Amendment) cases . . . have held that the Amendment proscribes more than physically barbarous punishments. . . . The Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ," against which we must evaluate penal measures. Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with "the evolving standards of decency that mark the progress of a maturing society." . . . or which "involve the unnecessary and wanton infliction of pain" . . . .

These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death," . . . . In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. . . . The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency . . . .

*Id.*, at 102-04 (numerous citations omitted).

To state a constitutional violation in the context of denial of necessary medical treatment, an inmate must prove two things: (1) plaintiff was suffering from a "serious medical need," and (2) prison officials were deliberately indifferent to the serious medical need. *Id.*, at 107.

The first showing under *Estelle* requires the court to determine whether the medical need was, objectively, "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied* 486 U.S. 1006 (1988). The United States Court of Appeals for the Third Circuit has also recognized that if "'unnecessary and wanton infliction of pain,' . . . results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003) (quoting *Lanzaro*, 834 F.2d at 347)).

The second prong requires a court to determine whether the officials acted with a sufficiently culpable state of mind, which is a subjective inquiry. It "is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

Deliberate indifference may be manifested in a variety of ways. *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). *Durmer* remarked that "deliberate indifference could exist in a variety of different circumstances," including where "knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care", or where, short of "absolute denial . . . necessary medical treatment [i]s . . . delayed for non-medical reasons," or "prison authorities prevent an inmate from receiving recommended treatment." *Id.*, 991 F.2d at 68 (internal quotation marks omitted) (quoting *Lanzaro*, 834 F.2d at 346).

In *Spruill v. Gillis,* the Court of Appeals for the Third Circuit listed some of "the conditions under which deprivation of medical treatment violates a prisoner's Eighth Amendment right not to be subjected to cruel and unusual punishment." 372 F.3d 218, 235 (3d Cir. 2004). Although "[a]llegations of medical malpractice" and "mere disagreement as to the proper medical treatment" are not sufficient to establish a Constitutional violation, the "deliberate indifference to serious medical needs" standard is "clearly met when a doctor is intentionally inflicting pain on a prisoner, where prison authorities deny reasonable requests for medical treatment and such denial exposes the inmate "to undue suffering or the threat of tangible residual injury," and where "knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care." *Id.*, at 235 (numerous citations and internal quotation marks omitted).

As summarized more fully by the Court of Appeals for the Third Circuit:

> This Court has concluded that the standard is met when prison officials 1) deny reasonable requests for medical treatment, and the denial exposes the inmate to undue suffering or the threat of tangible residual injury, 2) delay necessary medical treatment for non-medical reasons, or 3) prevent an inmate from receiving recommended treatment for serious medical needs, or deny access to a physician capable of evaluating the need for treatment. . . . We have also held that prison officials who continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm act with deliberate indifference . . .

*Whooten v. Bussanich*, 248 F.App'x 324, 326-27 (3d Cir. 2007) (citations omitted).

The Court of Appeals for the Third Circuit also has found that "prison officials who continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm act with deliberate indifference." *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). "Grossly negligent behavior can also constitute deliberate indifference, as can a doctor's choice to take an 'easier and less efficacious course of treatment' in response to a serious medical need." *Reed v. Cameron*, 380 Fed. App'x 160, 162 (3d Cir. 2010) (quoting *Lanzaro*, 834 F.2d at 347).

Where an inmate has a serious medical need, "prison officials are required to provide a level of care that is based on an acceptable professional assessment of the inmate. Although the deliberate indifference standard does not sag to the level of negligence, prison officials may not refuse to treat or treat with an eye to efficiency if it would pose an unnecessary or excessive risk to the inmate's health or safety." *Consonery v. Pelzer*, 2013 WL 593982, *5 (W.D.Pa. 2013) (citing, inter alia, *Szemple v. Univ. of Med. & Dent. of New Jersey*, 451 F. App'x 187, 191 (3d Cir. 2011) (a claim for deliberate indifference is stated where Department of Corrections dental director determined that tooth should be extracted at outside facility so that inmate could be sedated; this recommendation was denied and tooth was extracted with local anesthesia, causing extreme pain, heart irregularities and profuse bleeding)).

## IV.    Application

After careful consideration of the motions, responses, briefs in support and in opposition, and the concise statements of material facts and appendices submitted by the parties, the Court finds that Defendants have not met their burden of showing, through competent record evidence, that there is no genuine dispute as to material facts as to the elements of Plaintiff's claims of

deliberate indifference to his serious medical needs, and summary judgment should therefore be denied as to all claims and defendants.

## A. Preliminary matters

### 1. Plaintiff's serious medical needs conceded

Defendants have chosen not to contest the seriousness of any of Plaintiff's medical needs. Accordingly, for purposes of deciding the summary judgment motions, this Court assumes that each of Plaintiff's needs are serious. Plaintiff's five serious medical needs are: (a) the lump in his chest, or breast enlargement; (b) ringing in his ears, or tinnitus; (c) the mask on his face; (d) the knot in his testicle; and (e) Defendants' failure to educate patient as to side effects of medication. Plaintiff's conditions/claims presents a serious medical need. For purposes of deciding the motions for summary judgment therefore, the first prong of the *Estelle* deliberate indifference analysis has been conceded.

### 2. Defendants' failure to present affidavits, declarations or other testimonial evidence

As previously noted, Defendants have produced no affidavits, declarations, deposition testimony or expert medical reports explaining the meaning or interpretation of the medical records, or the reasonableness or efficacy of the treatments Defendants provided for Plaintiff's serious medical needs. In *Varner v. Jin*, 2014 WL 241752 (W.D.Pa. 2014), this Court issued an Opinion and Order denying summary judgment on behalf of SCI-Greene prison officials, including Superintendent Folino, and Medical Defendants, including Dr. Jin, in a section 1983 lawsuit by prisoner Donald Varner, who alleged "that he did not receive proper treatment for his human papilloma virus (HPV) and three serious complications arising therefrom: a painful swelling in his groin, a lump in his neck with severe pain in his ear and side of his head and white spots around his lips and groin." *Id.*, at *1.

As in Mr. Houser's case, the Defendants in *Varner* intoned the familiar mantra, i.e., "Medical Defendants argue that the records demonstrate that they were not deliberately indifferent to Plaintiff's serious medical needs because they saw him numerous times, examined him and prescribed tests," and the Corrections Defendants argue, inter alia, that Plaintiff's "own allegations indicate that he was seen more than 30 times over a nine-month period, and thus there is no basis for a claim that anyone was deliberately indifferent to his medical needs." *Id.*, at 8. "All Defendants argue[d] that Plaintiff has failed to demonstrate that they were deliberately indifferent to his serious medical needs and that the documentation attached to the complaint and to their motions demonstrates that he received frequent medical care but that he simply disagrees with the care he received, which is insufficient." *Id.*, at 9.

After carefully considering the legal arguments and facts presented by both sides, this Court found as follows:

> Defendants do not contend that Plaintiff's conditions did not present a serious medical need and the Court concludes that they did. Nevertheless, they argue that he has not supported his claims that they were deliberately indifferent to these needs.

> As the presentation of facts above indicates, however, it is the Defendants who have failed to meet their burden of demonstrating that there are no genuine issues of material fact. Taking the facts in the light most favorable to Plaintiff as the non-moving party, it appears that, although he was "seen" on numerous occasions by Dr. Jin, Dr. Park and others, the visits consisted of the same quick exam which noted swollen lymph nodes, a lump in the right side of his neck and white spots on his groin and around his mouth, which the doctors pronounced was "nothing to worry about." More troubling, the visits became confrontational . . . Defendants continued to insist that he did not have HPV even when he pointed out that he still had genital warts, which they admit are caused by HPV. His pain medications were often reduced and occasionally eliminated and on one occasion Dr. Jin told him he was not in pain.

> Finally and most tellingly, after Plaintiff was transferred to SCI–Mercer on November 20, 2012, he began receiving the very care that Defendants had refused to provide for him at SCI–Greene, namely referrals to

specialists including an ENT, a dermatologist, and a urologist. He had an ultrasound performed and then surgery to remove an introverted cyst in his groin. He had a thyroid specific blood test performed that revealed abnormal results indicative of hyperthyroidism.

Given this presentation of the facts, Defendants have not and cannot demonstrate that there are no genuine issues of material facts. This case must proceed to trial for the jury to determine whether Defendants were deliberately indifferent to Plaintiff's serious medical needs.

*Id.*, at 11.

Mr. Varner's case bears some factual similarity to Mr. Houser's in terms of symptoms and treatment or non-treatment of various conditions, but in terms of Defendants' summary judgment positions and the evidence they mustered to support their motions for summary judgment, the cases bear a striking resemblance.

As in this case, Defendants adduced progress notes, medical reports, results of some tests, and administrative, grievance related documents, but without any supporting affidavits, declarations or other testimonial evidence that could put the exhibits in context and explain the meaning of tests, reports and reasons why one modality was chosen over another. What the Court stated in *Varner* deserves repetition herein:

Prior to setting forth the facts in this case, it is necessary to review some legal principles that govern motions for summary judgment, prisoner civil rights cases and the burdens that parties bear. First, Defendants have submitted concise statements of material fact (ECF Nos. 105, 109) and appendixes in support (ECF Nos. 106, 110), which consist of various progress notes and physician's orders regarding Plaintiff's course of treatment at SCI–Greene, as well as reports of an x-ray of his cervical spine, a rectal swab test and an ultrasound of his head and neck. The concise statements purport to interpret various notes, symbols and abbreviations contained in the medical records; for example, the notation "sx" is rendered as ["symptoms"] in the concise statements. However, *Defendants have not provided any supporting affidavits regarding the content of Plaintiff's medical records. The Court of Appeals has held that, "because this Court is unable to conclusively interpret the results of his exam, we are obligated to draw any reasonable inferences in [the plaintiff's] favor."* Abdul–Aziz v. Nwachukwu, 523 F. App'x 128, 131 n. 5 (3d Cir. Apr.23, 2013) (citing Fed.R.Civ.P. 56(c)(2), *Reedy v. Evanson*, 615

F.3d 197, 210 (3d Cir. 2010)). *See also Pearson v. Prison Health Service*, 519 F. App'x 79, 82 (3d Cir. Mar.11, 2013) ("it is [Dr.] McGrath's burden as the movant to show that there is no genuine issue of material fact. *McGrath simply submitted Pearson's medical records, but there was no affidavit attesting to the authenticity or completeness of the records.* McGrath did not submit an affidavit describing his treatment of Pearson or explaining the reasons for the treatment and its timing.")

This observation is particularly relevant to Defendants' assertion that Plaintiff does not have HPV, in support of which they cite a March 13, 2012 clinical report of a rectal swab test. (ECF No. 105 ¶ 34; ECF No. 106 Ex. 4; ECF No. 109 ¶ 9(r); ECF No. 110 Ex. 1 at 11, Ex. 2 at 4.) Plaintiff disputes that this test was designed to recognize HPV and argues that its purpose was to check for abnormal cells that would indicate anal cancer caused by HPV. [footnote omitted] *Without supporting affidavits, this Court cannot conclusively interpret the results of this exam.*

Moreover, Plaintiff has submitted a page of Progress Notes from March 4 and March 11, 2011 (*these records were not submitted by any of the Defendants*) and referred to the Progress Notes from March 17 and March 24, 2011, during which he received several "histofreeze" treatments for genital warts, which are caused by HPV. It is noted that the notes contain assessments of "HPV." . . . [footnote omitted]

Second, in responding to the Defendants' statements of fact, Plaintiff denies most of the statements and refers to his own version of each medical visit, contained within the Appendix filed at ECF No. 113–1. *Each entry is signed and declared under penalty of perjury to be correct. Defendants have not responded to Plaintiff's statements.* He has also submitted an affidavit in which he summarizes the events. (ECF No. 113 Ex. 72.) Thus, *even if Defendants had supported their version of what the medical records contain with affidavits from the physicians, it could not be said that their version of events is undisputed.* "[W]hen there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." *Reedy*, 615 F.3d at 210 (citation omitted).

*Id.*, at 1-2 (emphasis added).

By contrast, Plaintiff has consistently made his averments subject to the penalty of perjury, pursuant to 28 U.S.C. § 1746 and Fed.R.Civ.P. 56(c)(4). Section 1746 provides that an unsworn declaration, if dated and signed by the declarant under penalty of perjury, has the same force and effect as a sworn affidavit for purposes of any requirement imposed by any federal rule

or regulation. *See, e.g., Owens v. Hinsley*, 635 F.3d 950 (7th Cir. 2011) (state inmate's verification of his response in opposition to defendants' summary judgment motion made his allegations regarding his delivery of his grievance to prison officials admissible, even though inmate's submission was not literally an "affidavit" because he did not swear to content in presence of someone authorized to administer oaths); *Burgess v. Moore*, 39 F.3d 216, 217-18 (8th Cir. 1994), *reh'g denied* (inmate's affidavit and civil rights complaint against corrections officers were signed under penalty of perjury and, thus, documents were sufficiently verified for purposes of refuting affidavits filed by corrections officers); *Duran v. Merline*, 923 F.Supp.2d 702, 716 n.7 (D.N.J. 2013) (giving pro se prisoner some leeway, district court considers, over defense objection, the prisoner's declaration made subject to punishment" to be in substantial compliance with section 1746 even though it did not state it was made under penalty of perjury); *Norwood v. Woodford,* 661 F.Supp.2d 1148 (S.D.Cal. 2009) (verified complaint or motion may be used as an opposing affidavit under rules for summary judgment to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence); *Williams v. Berks County, Pennsylvania*, 2006 WL 3827505, *1 n.3 (E.D.Pa. 2006) (verified statement made subject to penalties of 18 Pa.C.S.A. § 4904 are sufficient to satisfy the affidavit requirement of Fed.R.Civ.P. 56).

### 3. Number of medical visits and appointments not dispositive

Simply supplying some, or even a lot, of medical attention to a prisoner does not, of itself, insulate prison officials and responsible medical personnel from liability under section 1983 for deliberate indifference to a prisoner's serious medical needs. *See, e.g., Pearson,* 519 F.App'x at 84 (inmate was the subject of 32 physicians' orders and 72 progress notes, but "the number of entries in the medical records does not necessarily demonstrate that he received

constitutionally sufficient medical care."); *Durmer*, 991 F.2d at 68, n.9 ("Diagnosis is not equivalent to treatment; a defendant might be deliberately indifferent to a prisoner's specific medical needs regardless of how many doctors he sends him to for diagnosis."); *Varner*, 2014 WL 241752, *3 (citing *Pearson*, fact that prisoner was seen on 33 occasions during the period in question does not necessarily demonstrate that he received constitutionally adequate medical care).

To put a finer point on it, the fact that Plaintiff was "seen" on many occasions for "blood pressure, back and knee braces, athletes foot, hand injury," and was "sent for x-rays repeatedly" and "referred for physical therapy" is pretty much of a non sequitur on the question of the medical care provided or not provided *for the specific ailments and conditions* of which Plaintiff has been complaining and *which serious medical needs are the subjects of this lawsuit*.

### 4. Failure to give specific references and citations to record

Defendants fault Plaintiff's counterstatement of material facts as "not supported by any reference or citation to the record as required by the Rules." Defendants' Response to Plaintiff's Counterstatement (ECF No. 206), at 1-3. To the extent Plaintiff is relying on his personal knowledge in some of his statements of fact (about receiving and not receiving certain treatments, for instance), the Court is not certain he needs anything more specific, since his statements are made in accordance with 28 U.S.C. § 1746. That said, Defendants are correct in stating that Plaintiff was not overly specific in his references and citations to the record, although some of his statements are pinpoint (for example, his references to the radiologist report). Plaintiff's Appendix, Exhibit A (ECF No. 205-1), at 3.

But Defendants, who are counseled, are not free from fault on this score, and they certainly did not comply with the local and federal rules of procedure in preparing their CSMFs.

Fed.R.Civ.P. 56(c)(1)(A); LCvR 56.B.1, 56.C.1. "It is not for the court to search through the record . . . to find support for the plaintiff's purported facts; that burden lies with the plaintiff in responding to the defendant's materials." *Murray v. JELD-WEN, Inc*., 922 F.Supp.2d 497, 503 (M.D.Pa. 2013). *See also Langman v. Keystone Nat'l Bank & Trust Co*., 672 F.Supp.2d 691, 693-94 (E.D.Pa. 2009) ("Because the burden is on the parties to point us to relevant facts in the voluminous record, we have not embarked on an unguided tour of the parties' documents but instead focus on the facts that they have brought to our attention in their motions, responses, and briefs."). More colorfully, it has often been stated that "judges are not like pigs, hunting for truffles buried in briefs" and that, if factual support for a party's claims or defenses exist in the record, it is incumbent on the party to direct the court's attention to those facts. *DeShields v. Int'l Resort Prop. Ltd.*, 463 Fed.App'x 117, 120 (3d Cir. 2012) (quoting *United States v. Starnes*, 583 F.3d 196, 216 (3d Cir. 2009) and *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

**5. Personal involvement**

Plaintiff avers that each Medical Defendant played an active role in the denial of treatment for each of his serious medical needs, and that Superintendent Folino personally reviewed and uncritically accepted the course of treatment prescribed by Medical Defendants. As these statements of fact are not disputed, the requisite personal involvement by each Defendant is present.

**B. Plaintiff's serious medical needs**

With those preliminary matters out of the way, the Court will consider Defendants' arguments that the Plaintiff will be unable to meet his burden of proving that Defendants were deliberately indifferent to his specific, serious medical needs. Because his averments of fact with regard to his treatment and the efficacy of the treatment for these serious medical needs are

largely undisputed, the Court need not spend an inordinate amount of time teasing out particulars from the unexplained medical records.

### (a) Lump in chest, or breast enlargement

There is an obvious and genuine dispute of material fact with regard to Defendants' treatment of Plaintiff's breast deformity or lump in his chest. According to Defendants, Dr. Jin relied on the radiology report of Plaintiff's ultrasound examination and concluded that "plaintiff's enlarged breast was due to gynecomastia, based on the previous ultrasound that he had ordered." Gynecomastia is often relatively benign, although it can be painful and may be a sign of breast cancer or other serious condition. *See, e.g.*, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/gynecomastia/basics/definition/con-20028710 (last visited June 24, 2014); and National Institute of Health, http://www.nlm.nih.gov/medlineplus/ency/article/003165.htm (last visited June 24, 2014).

The problem for Dr. Jin, and obviously for Mr. Houser, is that the radiologist, Dr. Feldman, stated in that very report that although Mr. Houser's "prominence to breast parenchyma in the region of the right nipple, [is] *possibly* related to gynecomastia," . . . *other etiology is not excluded*." Feldman Report, Plaintiff's Appendix, Exhibit (A) (ECF No. 205-1), at 3 (emphasis added). Moreover, although Dr. Feldman did not find "apparent mass of ductal dilation or other abnormality to suggest a malignant process" he nevertheless opined that if "*the patient has not had a recent mammogram, a mammogram would be suggested for further evaluation. Biopsy should not be deterred if a suspicious abnormality is found* on physical examination." *Id.* (emphasis added).

Plaintiff continues to complain of pain in his breast, not to mention discharge, embarrassment and other discomforts, and there has apparently been no other "treatment" or

follow up testing since 2007 (no mammogram or biopsy). This Court is ill equipped to interpret the radiology report, but need not do so in order to resolve the motion for summary judgment as to this medical need. The radiology report, which Defendants did not provide Plaintiff until discovery in this case in 2012, supports Plaintiff's repeated requests for a mammogram (which, his research found, was the preferred test) and shows that the radiologist upon whom Dr. Jin and Superintendent Folino relied recommended a mammogram and if indicated, a biopsy of the lump in Plaintiff's chest. Suffice to say that it will be for a jury to determine whether Defendants have been deliberately indifferent to his breast deformity/ lump in his chest. *See, e.g., Varner*, 2014 WL 241752, *11 (brief physical examination by Dr. Jin of Mr. Varner's swollen lymph nodes, lump in the right side of his neck, and white spots on his groin and around his mouth, which the doctors pronounced was "nothing to worry about," without ordering ultrasounds, blood tests or other diagnostic tools as Plaintiff had been requesting, supports claim of deliberate indifference to serious medical needs).

### (b) Ringing of ears, or tinnitus

According to the National Institute of Health, tinnitus is often described as a "ringing in the ears" but it can also sound like roaring, clicking, hissing, or buzzing and it may be soft or loud, high pitched or low pitched. National Institute of Health, http://www.nlm.nih.gov/medlineplus/tinnitus.html (last visited June 24, 2014). "People with severe tinnitus may have trouble hearing, working or even sleeping. . . . Treatment depends on the cause. Treatments may include hearing aids, sound-masking devices, medicines, and ways to learn how to cope with the noise." *Id*. Plaintiff has been continually complaining about the ringing and pain in his ears, and the disturbing nature of the ongoing condition. Plaintiff's Counter Statement (ECF No. 204), ¶¶ 32-42.

Defendants claim that they treated Mr. Houser for this condition, and that he merely disagrees with the chosen course of treatment. It appears that Plaintiff was given some ear drops in 2007, but they burned his ears, and that he had an audiogram at that time which showed no hearing loss. Plaintiff counters that he never complained about hearing loss, and that Defendants have refused to provide any follow up evaluations of treatment since that time. It is not within this Court's ken to determine if an audiogram is a recognized evaluation tool for tinnitus or that the ear drops given Plaintiff were in fact an appropriate treatment for tinnitus, or that this treatment, such as it was, justified the lack of any follow up or alternative treatment modalities. Defendants have offered nothing to support those propositions, as is their burden.

In *Davidson v. Scully*, 155 F.Supp.2d 77 (S.D.N.Y. 2001), the district court considered a much more fully developed medical record which included testimony by the prisoner's treating physician, who concluded that the Plaintiff's tinnitus was not a serious medical need, and that "[e]ven if tinnitus were a serious medical need, the record shows that defendants have not been deliberately indifferent to that need. Plaintiff has had multiple medical evaluations regarding his tinnitus, and defendants have attempted to treat his tinnitus with Niacin and Prozac, a masking device, and ear plugs." *Id.*, at 84-85 (footnotes omitted). Plaintiff's complaints that he had not received the appropriate type or number of tests, had not been housed in a quieter cell, and had not been treated with drugs of his choice, "are simply complaints regarding the type of treatment that plaintiff received; such complaints are not actionable under the Eighth Amendment." *Id.*, at 85-86. Although the etiology and diagnosis appropriate for one prisoner may not mirror that of another prisoner presenting with the same constellation of symptoms, it is interesting to contrast the multiple evaluations and several different treatment modalities that were provided to Mr. Davidson with the audiogram and ear drops given to Mr. Houser in 2007, with no additional

follow up testing or treatment attempts and no testimony, affidavit or declaration explaining to the Court why an audiogram is an appropriate test or why the ear drop medication is a reasonable and appropriate treatment for tinnitus.

Defendants have not met their burden of proving that Plaintiff cannot prove deliberate indifference with regard to tinnitus, and summary judgment should be denied.

**(c) Mask on face**

Plaintiff's claim that Defendants ignored and refused to treat him for the "mask" on his face, presumably facial discoloration of some sort, is somewhat skeletal, and is not obviously a "serious medical need." Nevertheless, Defendants do not dispute Plaintiff's assertion that this is a serious medical need. With that first prong of the deliberate indifference analysis conceded for purposes of the motion for summary judgment, Defendants have not offered any evidence to show that Plaintiff was, in fact, treated or evaluated for this condition. Summary judgment on this claim should, therefore, be denied.

**(d) Knot in testicle**

The knot in Plaintiff's right testicle is a matter of great concern. Plaintiff avers he has been complaining about this condition, and the sometimes excruciating pain it causes him, for years, but Dr. Jin and company refused to examine him and treat him, and Superintendent Folino reviewed his grievance on this complaint and uncritically approved of Dr. Jin's non-treatment. Defendants point to no evidence of record to show that Plaintiff was, in fact, evaluated or treated for this painful condition. As in Mr. Varner's situation, summary judgment on this claim should also be denied.

**(e) Failure to educate patient as to side effects of medication**

Plaintiff claims that certain medications have triggered severe allergic reactions, such as swelling of his tongue and face. There is no dispute that Plaintiff has been diagnosed with acquired angioedema. This is a rare and potentially life threatening condition.[5] As a result, of his severe reactions to the medications, Plaintiff has become quite circumspect with regard to taking prescribed medications, and as Defendants hasten to point out, he frequently refuses to take certain medications.

In fact, Plaintiff avers in his Complaint (declared by him to be true and correct and made under penalty of perjury) that a steroidal cream medication given him in 2007 for heart burn caused him to become very ill with symptoms including stomach pain, nausea, chronic coughing and throat burning. Amended Complaint (ECF No. 81), at ¶ 1-2, 112-22. Plaintiff decided to discontinue all medications, and his immediate severe reactions improved, but, he alleges, during this period he developed the conditions that are the subject of this lawsuit. *Id*., at ¶¶ 3, 111, 121-22.

Plaintiff asserts that his health and well-being has been threatened by Medical Defendants' failure to properly educate him about side effects of his medications, and he avers that Dr. Jin, PA Diggs and CRNP Antanovich administered medications without explaining the potential side effects. Plaintiff also avers Superintendent Folino endorsed their handling of his medications. Defendants do not directly respond to this claim, which they concede presents a serious medical need, or to Plaintiff's averments. Summary judgment on this claim should, therefore, be denied.

---

[5] Acquired angioedema is "characterized by recurrent episodes of swelling. Patients present with nonpitting asymmetric edema of the face, lips, tongue, limbs, and genitals; severe abdominal pain due to edema of the gastrointestinal mucosa; and life-threatening edema of the upper respiratory tract." *See* Medscape, http://emedicine.medscape.com/article/1048887-overview#a0101 (last visited June 24, 2014). Prognosis is variable and depends on control of the underlying disorder. *Id*.

### C. Medical Defendants' statute of limitations argument

Medical Defendants argue that Plaintiff's claims are barred by the applicable two year statute of lmitations.[6] Medical Defendants Brief in Support of Motion for Summary Judgment (ECF No. 199), at 6. Other than recitation of the authority establishing that two years is the appropriate statute of limitations in a section 1983 civil rights suit for deliberate indifference, Medical Defendants entire argument on the statute of limitations is as follows:

> Plaintiff initiated this action by filing a complaint on March 30, 2010. [ECF 3] He was later permitted to file an amended complaint; however, paragraphs 1-15, pertaining to the swelling in his chest, ringing in his ears, mask on his face and knot in his right testicle all occurred prior to March 30, 2008, as evidenced by the complaint itself. [ECF 81, pp. 3-5, ¶¶-15; ECF 140, p. 1, ¶1].
>
> *  *  * [citations omitted]
>
> Therefore, since the allegations supporting plaintiff's claims occurred more than two years prior to the filing of his original complaint, his claims are untimely and must be dismissed. [footnote 1]
>
> _____
>
> [footnote 1] The only claim contained in paragraph 1 of plaintiff's Motion for Partial Voluntary Dismissal [ECF 140, p. 1, ¶1] that appears to have occurred within the two year statute of limitations is the alleged "failure to educate patient as to the risk and side effects of medication prior to them being issued to the patient." [ECF 81, pp.6-8, ¶¶30-43] However, for the reasons set forth in Section C, pertaining to plaintiff's failure to state a claim for deliberate indifference, this remaining claim should likewise be dismissed.

*Id.*, at 6-8, n.1.

Medical Defendants' spartan argument is not convincing. All of Plaintiff's conditions, though apparently first "contracted" in 2007, continue to plague him, and he avers he has been seeking treatment for these conditions from that time to the present, but his requests continue to

---

[6] "It is well-settled that the appropriate statute of limitations for a Section 1983 action brought in Pennsylvania is the two-year statute of limitations contained in 42 Pa.C.S.A. § 5524." *Lewen v. Edinboro Univ.*, 2011 WL 4527348, *6 (W.D.Pa. 2011) (citing *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78 (3rd Cir. 1989).

fall on deaf ears. The alleged deliberate indifference occurs each time treatment is refused or the deliberate indifference is otherwise made manifest. *See Anders v. Bucks County*, 2014 WL 1924114, *5, n.9 (E.D.Pa. 2014) ("Because deliberate indifference is manifest when 'prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate to undue suffering or the threat of tangible residual injury,' the plaintiff has a cause of action for each time her requests for medical care were denied.") (citing *Lanzaro*, 834 F.2d at 346–47).

A section 1983 claim accrues when the plaintiff knows, or has reason to know, of the injury on which the claim is based. *See Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir. 1998). Plaintiff will often know of the refusal or delay of needed medical treatment when it occurs (although the exact timing of any delay in providing medical treatment may not present a bright line of demarcation). *See Green v. Philadelphia County Prisons,* 2006 WL 2869527, *6 (E.D.Pa. 2006) ("With the plaintiff's § 1983 Eighth Amendment cause of action, the injuries accrued on the date(s) that Avella and Sowers displayed the deliberate indifference to Mr. Green's medical needs. It was on those days that Mr. Green should have known he was injured under the Eighth Amendment.").

Plaintiff's claims of deliberate indifference to his serious medical needs, therefore, encompasses any *manifestations* of deliberate indifference made within two years of filing his initial complaint, which was on March 29, 2010. The alleged deliberate indifference did not cease in 2007, the year in which Plaintiff alleges he first developed his conditions, and Medical Defendants make no attempt to show that their alleged manifestations of deliberate indifference to Plaintiff's serious medical needs accrued outside of the two year statute of limitations. Summary judgment on the basis of the statute of limitations should also be denied.

### III.    Conclusion

For the reasons stated above, it is respectfully recommended that the motions for summary judgment filed on behalf of Superintendent Louis S. Folino (ECF No. 193), and the Medical Defendants (ECF No. 198)be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days from the filing of this Report and Recommendation to file Objections. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

DATE: June 24, 2014

cc:

(electronically) all counsel of record

(by U.S. mail)
Darien Houser
GL-7509
175 Progress Drive
Waynesburg, PA 15370