IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARIEN HOUSER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 2:10-cv-00416 |
| | ) |
| LOUIS S. FOLINO, SUPERINTENDENT, | ) |
| SCI-GREENE, and DR. JIN, MD, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| AMBROSE, Senior District Judge | ) |
| | ) |
| | ) |

**OPINION
AND
ORDER OF COURT**

Pending is Plaintiff's Motion for New Trial. [ECF No. 386]. Defendants Louis Folino and Dr. Jin each filed a Brief in Opposition. [ECF Nos. 388, 389]. After a careful review of the submissions of the parties, Plaintiff's Motion is denied.

**I.    BACKGROUND**

The factual and procedural details of this case are well known to the parties, and I need not repeat them in detail here. In short, Plaintiff, Darien Houser ("Plaintiff"), initiated this *pro se in forma pauperis* prisoner civil rights action almost six years ago, on March 29, 2010. [ECF Nos. 1, 3]. He filed the operative Amended Complaint on July 31, 2012. [ECF No. 81]. At the time of trial, Plaintiff's remaining claims alleged that he suffered harm as a result of the Defendants' deliberate indifference to his serious medical needs while incarcerated at the Pennsylvania State Correctional Institution-Greene ("SCI-Greene") in violation of the Eighth Amendment to the United States Constitution. Specifically, Plaintiff claimed that SCI-Greene's Medical Director, Defendant Dr. Byunghak Jin, M.D. ("Dr. Jin") failed to provide timely and appropriate treatment to

1

Plaintiff for the following serious medical conditions: (a) lump in chest, or breast enlargement; (b) ringing of ears, or tinnitus; (c) mask on face; and (d) knot in testicle. Plaintiff also claimed that Defendant Louis S. Folino ("Folino"), who was Superintendent of SCI-Greene during the relevant period, was deliberately indifferent to these serious medical needs. Additionally, Plaintiff claimed that Dr. Jin was deliberately indifferent to his serious medical needs when he failed to educate Plaintiff as to the side effects of medication before administering the medication to Plaintiff, with resulting negative consequences to Plaintiff.

On July 23, 2014, Magistrate Judge Cynthia Reed Eddy granted Plaintiff's Motion to Appoint Counsel for purposes of trial. [ECF No. 213]. Specifically, in accordance with local procedure, Judge Eddy entered an Order directing the Clerk of Court to "request" a lawyer to consider entering an appearance on behalf of Plaintiff and to notify all parties once an attorney had accepted. See id. On November 17, 2014, the law firm Reed Smith LLP accepted the request to represent Plaintiff *pro bono*. [ECF No. 216]. On August 20, 2015, Plaintiff's counsel filed a Motion to Withdraw on the grounds that the attorney-client relationship had been irretrievably broken; that there had been a fundamental disagreement between Plaintiff and counsel; and there had been a complete breakdown in communication between Plaintiff and counsel. [ECF No. 256]. On August 27, 2015, I heard argument on the Motion to Withdraw. Plaintiff participated in that proceeding via videoconference. [ECF No. 289]. On that same date, I granted the Motion to Withdraw and terminated Reed Smith as counsel. Counsel was ordered to transmit all non-privileged documents to Plaintiff, including deposition transcripts, medical records, and expert reports. [ECF No. 290]. I also agreed to continue the jury trial set to begin on October 5, 2015 to December 1, 2015. [ECF No. 291].

The jury trial began in this case on December 1, 2015, and concluded on December 4, 2015. At the conclusion of the trial, the jury returned a verdict in favor of Defendants, finding that Plaintiff had not proved that any of his alleged medical conditions amounted to a serious medical

need.  [ECF No. 373].   On January 6, 2016, Plaintiff filed the instant Motion for New Trial.  [ECF No. 386].   Defendant Folino filed his Response in Opposition on January 12, 2016 [ECF No. 388], and Defendant Jin filed his Response in Opposition on January 20, 2016.  [ECF No. 389].  Plaintiff's Motion is now ripe for my review.

## II.  STANDARD OF REVIEW

The decision to grant a new trial is committed to the sound discretion of the district court.  Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940); U.S. v. Schiffer, 836 F. Supp. 1164, 1169 (E.D. Pa. 1993), aff'd, 31 F.3d 1175 (3d Cir. 1994).  Pursuant to Rule 59, a motion for a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1).  Such reasons include prejudicial erroneous judicial rulings or misconduct by opposing counsel.  Olefins Trading, Inc. v. Han Yang Chem Corp., 9 F.3d 282, 289-90 (3d Cir. 1993); Schiffer, 836 F. Supp. at 1169.  In such cases, the court must assess whether an error was, in fact, committed, and whether the error was so prejudicial that denying a new trial would be inconsistent with substantial justice.  Bhaya v. Westinghouse Elec. Corp., 709 F. Supp. 600, 601 (E.D. Pa. 1989), aff'd, 922 F.2d 184 (3d Cir. 1990).  Another reason for a new trial is where "the verdict is contrary to the great weight of the evidence."  Roebuck v. Drexel Univ., 852 F.2d 715, 735 (3d Cir. 1988).  In the latter case, a new trial is warranted only in those circumstances "where 'a miscarriage of justice would result if the verdict were to stand.'"  Olefins Trading, 9 F.3d at 289 (quoting Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 211 (3d Cir. 1992)).  A new trial is never appropriate in cases involving only harmless error.  Fed. R. Civ. P. 61.  When reviewing a jury verdict, the District Court has an "obligation . . . to uphold the jury's award if there exists a reasonable basis to do so."  Motter v. Everest & Jennings, Inc., 883 F.2d 1223, 1230 (3d Cir.1989).  When "reviewing a motion for a new trial, the court must draw all reasonable inferences in favor of the verdict winner."  Spencer v. Biggins, No. 1:11-CV-01850, 2014 WL 1796606, at *2 (M.D. Pa. May 6, 2014) (citing Marino v.

Ballestas, 749 F.2d 162, 167 (3d Cir. 1984)).

## III. LEGAL ANALYSIS

### A. Failure to Appoint Counsel

Plaintiff first argues that I erred in refusing to appoint him new counsel after allowing his prior appointed counsel to withdraw their representation. He contends that his ability to present his case on his own was doubtful given, inter alia, the intricacies of the discovery rules and the complexity of the case. [ECF No. 386, at 2-3]. This argument is without merit.

It is well-established that "[a]n indigent civil litigant possess[es] neither a constitutional nor a statutory right to appointed counsel." Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002). Rather, 28 U.S.C. § 1915(e)(1) provides that"[t]he court may request an attorney to represent any person unable to afford counsel." This statute "gives district courts broad discretion to request an attorney to represent an indigent civil litigant." Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993).

This is not a case in which the Court refused to appoint counsel. Rather, I appointed two attorneys from Reed Smith LLP as counsel for Plaintiff in late 2014 after Defendants' summary judgment motions were denied and the case was ready to proceed to trial. Appointed counsel worked zealously on Plaintiff's behalf for almost a year, including, inter alia, conducting additional written and oral discovery and securing a medical expert for Plaintiff. I granted counsel's motion to withdraw only after hearing the positions of the parties at a conference in August 2015 in which Plaintiff participated via video. Counsel's grounds for withdrawal included, inter alia, a fundamental disagreement between Plaintiff and counsel about how to litigate the case and a total breakdown in communication. [ECF No. 256]. Although Plaintiff asserts that he did not request that counsel be removed, it was clear through the filings and arguments before the Court that Plaintiff's disagreements with counsel and other actions made it impossible for Reed Smith to continue their representation. Counsel provided copies of all discovery they obtained to Plaintiff

upon withdrawal, and the medical expert whom counsel retained appeared at trial and testified on Plaintiff's behalf.

Following the withdrawal of Reed Smith, Plaintiff made a second request for appointed counsel. As set forth above, as a civil litigant, Plaintiff does not have a right to any counsel, let alone counsel of his choice. The Court expended considerable effort and experienced significant difficulty finding counsel willing to represent Plaintiff in the first instance. Reed Smith is a prestigious law firm, and the Reed Smith attorneys appointed in this case represented Plaintiff ably and effectively. In addition, at trial, Plaintiff demonstrated a command of the facts and the law and competently presented his own case. For all of the above reasons, it was well within my discretion to deny Plaintiff's request for a second appointment of counsel in this matter.

**B.     Refusal to Grant Plaintiff's Motion to Continue the December 1, 2015 Trial Date**

Plaintiff commenced this litigation in 2010. Following appointment of counsel for Plaintiff in July 2014, I issued a pretrial order setting the trial date for August 3, 2015. [ECF No. 228]. On June 30, 2015, I continued the trial date to October 5, 2015 due to the unavailability of two of the then-medical defendants during the week of August 3, 2015. [ECF Nos. 239, 243]. After granting Plaintiff's counsel's motion to withdraw on August 27, 2015, I granted counsel's concomitant motion to continue the trial on Plaintiff's behalf and pushed back the October 5, 2015 trial date an additional two months to December 1, 2015. [ECF No. 291]. Only one week before trial, on November 24, 2015, Plaintiff moved to continue the trial date even further. [ECF No. 362]. Plaintiff argues that my refusal to extend the trial date was an abuse of discretion. [ECF No. 386, at 3-4]. I disagree.

As set forth above, this case was over five years old at the time of trial. During this protracted time period, this Court was more than generous in providing numerous extensions of time, including two extensions of the trial date. During the months preceding trial, I also granted Plaintiff a number of extensions to submit pretrial motions and documents. [ECF Nos. 314-317,

5

322-323]. After careful review of the docket in this case and the arguments of the parties, I agree with Defendants that Plaintiff had more than ample time to prepare for trial, and that the denial of Plaintiff's eleventh-hour request for yet another continuance was well within the Court's discretion and did not unfairly prejudice Plaintiff.

### C. Seating of Plaintiff in the Courtroom and Order of Opening Statements

Plaintiff argues that a new trial is warranted because I did not permit him to sit on the same side of the courtroom as the jurors and did not allow him to present his opening statement first. [ECF No. 386, at 4]. This argument is without merit. As an initial matter, Plaintiff's assertion that he did not present his opening statement first is false. Plaintiff gave his opening statement on December 1, 2015, the first day of trial, immediately after I read the preliminary charge to the jury. [ECF No. 372]. Second, the decision to seat Plaintiff on the opposite side of the courtroom from the jury was well within my discretion under the facts and circumstances of this case. For security reasons, Plaintiff was required to remain shackled throughout the trial, and Plaintiff had expressed concern to the Court about the jury seeing his restraints. Seating Plaintiff at the far table and placing cardboard around the bottom of the table minimized the chances of the jury observing Plaintiff's restraints. In addition, I required all parties, including defense counsel, to remain seated at all times for the entire trial to further avoid any prejudice to Plaintiff. Finally, Plaintiff's placement at the far table allowed the U.S. Marshals and correctional officers unfettered access to Plaintiff in the event a disruption occurred, thus minimizing security concerns. There is no indication that Plaintiff's seating in the courtroom hindered his ability to present his case or otherwise had any influence on the outcome of the trial. For all of these reasons, Plaintiff's seating in the courtroom is not grounds for a new trial.

### D. Refusal to Allow Plaintiff to Testify Prior to His Expert Witness

Plaintiff requests a new trial because I allowed his medical expert, Dr. Zillweger, to testify first during Plaintiff's case in chief. [ECF No. 386, at 4]. Plaintiff contends that the refusal to

allow Plaintiff himself to testify first was "contrary to standard practice and rules of court" and amounted to abuse of discretion and unfair prejudice.  See id.  I disagree.

Plaintiff chose to present the testimony of Dr. Zillweger at trial.  The order of Dr. Zillweger's testimony was based solely on Dr. Zillweger's schedule and availability to testify.  It is not uncommon for witnesses to testify out of order during trial due to availability issues or other reasons.  Here, Dr. Zillweger was present in the courtroom and testified on Plaintiff's behalf.  Plaintiff subsequently was able to present the remainder of his case in chief.  There is no evidence that the order of Dr. Zillweger's testimony was confusing to the jury or had any bearing on the outcome of the trial.  Accordingly, the fact that Dr. Zillweger testified before Plaintiff does not warrant a new trial in this case.

### E. Failure to Evaluate Plaintiff's Expert Witness

Plaintiff's argues that I erred in failing "to conduct a colloquy or hold a conference with Dr. Zillweger" to see if he was "certified in the area of medical profession" pertaining to Plaintiff's injuries before allowing him to stay on Plaintiff's case after the withdrawal of Plaintiff's counsel. [ECF No. 386, at 4-5].  Plaintiff suggests that he was prejudiced because Defendants "capitalized" off of Dr. Zillweger's lack of board certification in certain areas to the detriment of Plaintiff at trial.  See id.  This argument is unpersuasive.

As Defendants note, the Court does not have any duty or obligation to investigate or evaluate a party's own expert witness prior to allowing that expert to testify at trial.  It is the party's duty to evaluate his expert and determine whether he wishes him to testify at trial on his behalf. Plaintiff's suggestion that the Court somehow introduced Dr. Zillweger as an expert rather than Plaintiff is disingenuous at best.  As Plaintiff's own pretrial filings make clear, Dr. Zillweger initially was retained by Plaintiff's counsel.  After counsel withdrew, counsel informed the Court that Dr. Zillweger remained willing to continue as Plaintiff's expert and Plaintiff agreed.  [ECF No. 333, 340].  Plaintiff further indicated in his Pretrial Statement filed on November 5, 2015, that he

planned to call Dr. Zillweger as an expert witness at trial. [ECF No. 328]. Plaintiff's after-the-fact dissatisfaction with portions of Dr. Zillweger's testimony or how Dr. Zillweger held up on cross-examination is neither the Court's responsibility nor grounds for a new trial.

Plaintiff's additional suggestion that Dr. Zillweger's testimony was somehow tainted because he was paid for his services by the Court is nonsensical. As an initial matter, under the Court's pro bono program, Dr. Zillweger would have been paid for his court time from the Court's pro bono fund even if counsel continued to represent Plaintiff at trial. Moreover, as set forth above, Plaintiff affirmatively represented to the Court that he wished Dr. Zillweger to remain on the case and even filed a motion for payment of expert witness fees. [ECF No. 340]. The Court's agreement to pay the court costs associated with Dr. Zillweger's testimony through its pro bono fund even after counsel withdrew, was intended solely to assist Plaintiff (who otherwise would have been unable to afford to retain an expert witness), not to sabotage his case.

For all of these reasons, Plaintiff's request for a new trial on these grounds is denied.

### F. Insufficient Notice of Deposition for Use at Trial

Plaintiff complains that it was an abuse of discretion to allow Dr. Jin to take a video deposition of his medical expert, Dr. Itzkowitz, prior to trial. [ECF No. 386, at 5]. This argument is without merit. The deposition at issue was not a discovery deposition. Rather, Dr. Jin took the deposition of Dr. Itzkowitz for use at trial due to Dr. Itzkowitz's unavailability. [ECF No. 374, at 38]. Plaintiff was provided with notice of the deposition, and significant arrangements and accommodations were made for Plaintiff to participate in the deposition via videoconference. Id. at 4-5. On the day of the deposition, defense counsel waited over thirty minutes before beginning to allow Plaintiff's participation. The attorneys ultimately were informed, however, that Plaintiff had emphatically refused to participate. [ECF No. 374, at 5; ECF Nos. 375, 376]. Plaintiff's choice not to take part in the deposition and forego the opportunity to cross-examine the witness was voluntary and is not grounds for a new trial.

## G. Alleged False Testimony by Dr. Jin's Medical Expert

Plaintiff alleges that Dr. Itzkowitz testified falsely to Dr. Jin by "providing appropriate and standard course of treatment as to Plaintiff's . . . [v]aricose vein," even though Dr. Jin never testified to Plaintiff having varicose veins. [ECF No. 386, at 5]. Plaintiff continues that he was unable to impeach such testimony because Dr. Itzkowitz testified via video deposition. Id. This argument is misplaced. As an initial matter, I reviewed the transcript of Dr. Itzkowitz's deposition, and there was no discussion during that testimony about varicose veins. [ECF No. 374]. Moreover, as set forth in the preceding subsection, Plaintiff voluntarily chose not to participate in Dr. Itzkowitz's deposition for use at trial, despite significant accommodations made to allow him to do so. No one prevented Plaintiff from taking part in the deposition and cross-examining Dr. Itzkowitz at that time. Accordingly, a new trial on these grounds is not warranted.

## H. Refusal to Allow Plaintiff to Use Medical Reference Guides and/or Treatises

Plaintiff argues that I erred by refusing to allow him to introduce certain medical reference guides and treatises as evidence at trial. [ECF No. 386, at 5-6]. This argument is meritless. Federal Rule of Evidence 803(18) provides that a statement contained in a treatise, periodical, or pamphlet is admissible as an exception to the hearsay rule if:

> (A) the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and
>
> (B) the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice.
>
> If admitted, the statement may be read into evidence but not received as an exhibit.

Fed. R. Evid. 803(18) (emphasis added).

In this case, Plaintiff attempted to refer to/read from and/or introduce excerpts from alleged medical treatises and reference books during his own testimony or examination of other non-expert witnesses. Plaintiff did not attempt to utilize the alleged books and treatises during the examination of any expert. Accordingly, the hearsay exception did not apply, and the Court

9

properly sustained defense counsel's timely objections to Plaintiff's attempts to introduce this hearsay evidence at trial.

### I. **Allegedly Biased Jury Instructions**

Plaintiff contends that the Court's jury instructions were "tailored and in favor of the defendants, while lacking language of standard jury instructions." [ECF No. 386, at 6]. This argument is not grounds for a new trial. It is well-established that in order to advance a post-trial claim based on an allegedly erroneous jury instruction, the movant must have made a timely and specific objection to that jury instruction prior to the jury retiring to consider its verdict. See Alexander v. Riga, 208 F.3d 419, 426 (3d Cir. 2000) (citing Fed. R. Civ. P. 51). Unless the Court finds plain error, a party who fails to challenge a jury instruction at the appropriate time typically is deemed to have waived such challenge. See id.

Here, I provided typewritten copies of the proposed jury charge to Plaintiff and defense counsel prior to the close of trial. I subsequently held a charge conference at which all counsel and Plaintiff could raise objections or request changes to the jury instructions. Plaintiff did not raise these objections or request any changes to the jury instructions at the charge conference or at any other time prior to the jury deliberations. Accordingly, Plaintiff's current objections are untimely and are waived.

Plaintiff's vague and conclusory arguments regarding the instructions on credibility of witnesses likewise fail to demonstrate plain error. Contrary to Plaintiff's contentions, the jury instructions contained primarily standard language, including language mirroring the Third Circuit Model Jury Instructions. To the extent Plaintiff feels that the discussion of credibility of witnesses in the jury instructions prejudiced him because he did not have any witnesses, such argument is unpersuasive. Again, the Court's instructions on credibility were standard and unobjected to.[1]

---

[1] Among other things, I instructed the jury that "[t]he number of witnesses offered by one side or the other does not, in itself, determine the weight of the evidence. It is a factor, but only one of many factors that you

Moreover, Plaintiff's assertion that he had "no witnesses" is incorrect. Rather, he called his medical expert as a witness as well as testified on his own behalf. Plaintiff's decision not to call any additional witnesses was his choice, and the jury was entitled to weigh the credibility of all witnesses in accordance with the instructions as given.

### J. Comments Regarding Security Restraints

Plaintiff's tenth argument reads, in its entirety, as follows: "Trial judge testifying as to Black box and chains 'the same restraints you have worn to court all week,['] while overruling Plaintiff's objections and explanation for not going to medical appointment. Abuse of discretion." [ECF No. 386, at 6-7].

Although Plaintiff fails to provide any details regarding the line of questioning at issue, he appears to allege that I inappropriately referenced his security restraints in connection with testimony concerning his refusal to attend a medical appointment. This conclusory argument is without merit. It was Plaintiff who brought up the issue of his security restraints, including the "black box" restraint, during his own testimony at trial to explain why he refused to attend a medical appointment for a mammogram. It was defense counsel who objected to Plaintiff's reference to the "black box" restraint as irrelevant and questioned whether Plaintiff's restraints at trial were one in the same. Although I agreed with defense counsel that the "black box" itself was not an issue in the case, I also agreed with Plaintiff that the black box might be relevant insofar as it was an explanation by Plaintiff of why he did not attend the mammogram. I also indicated that the jury could consider the evidence and make its own determination as to its weight. Because I allowed the jury to consider Plaintiff's testimony that he refused to go to the mammogram because of his security restraints, Plaintiff's abuse of discretion argument is misplaced and does

---

should consider. . . . The important thing is the quality of the testimony of each witness. In short, the test is not which side brings the greater number of witnesses or presents the greater quantity of evidence; but which witness or witnesses, and which evidence, you consider most worthy of belief. Even the testimony of one witness may outweigh that of many, if you have reason to believe his or her testimony in preference to theirs. Obviously, however, where the testimony of the witnesses appears to you to be of the same quality, the weight of numbers assumes particular significance."

not provide grounds for a new trial.

## K. Refusal to Allow Certain Impeachment Evidence

Plaintiff argues that "District trial court Judge, refused to allow Plaintiff to present Material documentation Policy for impeachment purpose/to impeach defendants false testimony." [ECF No. 386, at 7]. It is impossible to determine from this vague and conclusory statement the exact nature of Plaintiff's complaint. In general, however, the evidentiary rulings in this case were appropriate and in accordance with the Federal Rules of Evidence. Plaintiff's mere dissatisfaction with those rulings does not entitle him to a new trial.

## IV. CONCLUSION

For all of the reasons set forth above, Plaintiff's Motion for New Trial is denied in its entirety.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARIEN HOUSER,<br><br>Plaintiff,<br><br>vs.<br><br>LOUIS S. FOLINO, SUPERINTENDENT, SCI-GREENE, and DR. JIN, MD,<br><br>Defendants.<br><br>AMBROSE, Senior District Judge | No. 2:10-cv-00416 |

## ORDER OF COURT

AND NOW, this 1st day of March, 2016, upon consideration of Plaintiff Darien Houser's Motion for New Trial [ECF No. 386], it is ordered that the motion is denied.

BY THE COURT:

/s/Donetta W. Ambrose
Donetta W. Ambrose,
Senior U.S. District Judge